# 22-0810-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————◆———————————

LORRAINE A. GITTENS-BRIDGES,

*Plaintiff-Appellant,*

– v. –

CITY OF NEW YORK, CLAUDETTE WYNTER, in their individual capacities
and as aiders and abettors, DINA SIMON, in their individual capacities and as
aiders and abettors, NADENE PINNOCK, in their individual capacities and as
aiders and abettors, AUDWIN PEMBERTON, in their individual capacities and
as aiders and abettors, GARLAND BARRETO, in their individual capacities and
as aiders and abettors,

*Defendants-Appellees,*

NEW YORK CITY DEPARTMENT OF CORRECTIONS,

*Defendant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

GORDON GORDON & SCHNAPP, P.C.
*Attorneys for Plaintiff-Appellant*
30 Broad Street, 21st Floor
New York, New York 10004
(212) 355-3200

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ............................................................... 1

ISSUES PRESENTED FOR REVIEW ......................................................... 1

STATEMENT OF THE CASE ....................................................................... 3

    A.   Plaintiff's Background and Employment by DOC until 2014 .............. 3

    B.   The Arrival of Simon and the Removal of Plaintiff's Duties .............. 5

    C.   Plaintiff's Applications for Higher-Level Duties ................................ 7

        (1)   Director of Recruiting ................................................................ 8

        (2)   Recruiting Manager.................................................................... 9

        (3)   Project Manager ........................................................................ 9

    D.   Plaintiff's Complaints at the May 29, 2015 "Town Hall"
Meeting ............................................................................................... 10

    E.   Plaintiff's Further Applications for upgrades ..................................... 11

        (1)   HR Special Projects ................................................................... 11

        (2)   Director Strategic Partnerships and Community
Engagement................................................................................ 12

        (3)   Director of Human Resources.................................................... 12

    F.   Plaintiff's Supervision by Audwin Pemberton ................................. 13

    G.   Plaintiff Passed over for Promotion to Administrative Staff
Analyst................................................................................................ 15

    H.   Plaintiff's EEOC Charge ................................................................... 18

    I.   The Proceedings Below....................................................................... 19

        (1)   The ruling on the motion to dismiss ......................................... 19

        (2)   The March 30, 2022 Opinion and Order granting
Defendant's Motion for Summary Judgment ........................... 21

i

      (3)      The Deficiencies of Plaintiff's Prior Attorney ..........................23

THE APPLICABLE STANDARD ..........................................................25

SUMMARY OF ARGUMENT ..............................................................28

ARGUMENT ......................................................................................31

      POINT I

      THE COURT BELOW SHOULD NOT HAVE DISMISSED
      PLAINTIFF'S CLAIMS OF HOSTILE WORK ENVIRONMENT ............31

      POINT II

      THE COURT SHOULD NOT HAVE DISMISSED PLAINTIFF'S
      AGE DISCRIMINATION CLAIMS BROUGHT UNDER THE
      NEW YORK CITY AND NEW YORK STATE HUMAN RIGHTS
      LAWS ..........................................................................................38

            A.      Non-selection from the Exam 5517 list for promotion .............40

            B.      Non-selection for at least six vacancies in 2014-2015 .............47

            C.      The Downgrading of Plaintiff .................................................50

      POINT III

      PLAINTIFF'S RETALIATION CLAIMS SHOULD NOT HAVE
      BEEN DISMISSED ........................................................................52

      POINT IV

      INDIVIDUAL LIABILITY ...........................................................55

CONCLUSION .....................................................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Abu-Brisson v. Delta Airlines, Inc.,
  239 F.3d 456 (2d Cir. 2011) ...................................................................26

Bennett v. Health Mngt Sytems,
  92 A.D. 3d 29, 936 N.Y.S. 2d 112 (1st Dep't 2011) ..................................... 28, 39

Bermudez v. City of New York,
  783 F. Supp. 560 (SDNY 2011) ...............................................................35

David v. United Fruit Co.,
  402 F. 2d 328 (2d Cir. 1968) ..................................................................24

Davis-Garrett v. Urban Outfitters,
  921 F. 3d 30 (2d Cir. 2019) ...................................................................35

De Cintio v. Westchester Cnty. Med. Ctr.,
  821 F. 2d 111 (2d Cir. 1987) ..................................................................53

Dister v. Continental Group, Inc.,
  859 F. 2d 1108 (2d Cir. 1988) ................................................................26

Dodson v. Runyon,
  86 F. 37 (2d Cir. 1996) ........................................................................24

Feingold v. New York,
  366 F.3d 138 (2d Cir. 2004) ..................................................................55

Getschmann v. James River Paper Co., Inc.,
  822 F. Supp 75 (D. Conn. 1993)..............................................................26

Gregorian v. New York Life Ins. Co.,
  211 A.D. 3d 711, 180 N.Y.S. 36 (2 Dep't 2022)...................................................27

Henry v. Morgan's Hotel Group, Inc.,
  2018 WL 502711 (S.D.N.Y. 2018)............................................................24

Henry v. Wyeth Pharms. Inc.,
  616 F. 3d 134 (2d Cir. 2010) ..................................................................36

Holcomb v. Iona College,
   521 F.3d 130 (2d Cir. 2008) ...................................................................26

Hudson v. Merrill Lynch & Co., Inc.,
   138 A.D. 3d 514, 31 N.Y. 3d 3 (1 Dep't 2016).....................................27

Luciano v. Olsten Corp.,
   110 F. 3d 210 (2d Cir. 1997) ......................................................... 26, 27

McDonnell Douglas Crop. v. Green,
   411 U.S. 792 (1973)................................................................. 21, 26, 27

Melman v. Montefiore Med. Ctr.,
   98 A.D.3d 107; 946 N.Y.S.2d 27 (1st Dep't 2012)..............................27

Raffa v. Am. Nat. Red Cross,
   2011 WL 6019436 (N.D.N.Y. 2011) ......................................................26

Raniola v. City of New York,
   243 F. 3d 610 (2d Cir. 2001) ................................................................53

Reeves v. Sanderson Plumbing Products, Inc.,
   530 U.S. 133, 120 S. Ct. 2091, 147. L. Ed. 2d 105 (2000) ..................35

Summer v. United Postal Serv.,
   899 F. 2d 203 (2d Cir. 1990) ................................................................53

Terry v. Ashcroft,
   336 F. 3d 138 (2d Cir. 2003) ................................................................26

Tomassi v. Insignia Fin. Grp. Inc.,
   478 F. 3d 111 (2d Cir. 2007) ................................................................36

Watson v. Emblem Health Servs.,
   158 A.D. 3d 179, 69 N.Y.S. 3d 595 (1st Dep't 2018)..................... 28, 39

Williams v. New York City Hous. Auth.,
   61 A.D.2d 62, 872 N.Y.S.2d 27 (1st Dep't 2009), lv. denied
   13 N.Y. 3d 702, 2009 WL 2622097 (2009)............................. 27, 39, 42

## Statutes and Other Authorities:

U.S. Const., amend XIV .............................................................................20

28 U.S.C. § 1291 ..........................................................................................1

iv

42 U.S.C. § 1983 ................................................................................ 3, 19, 20

Executive Law § 296 ................................................................................ 3

Executive Law § 296(6) ........................................................................... 55

Fed. R. Civ. P. 56(a)-(c) ......................................................................... 25

New York City Administrative Code § 8-106 ........................................ 56

New York City Administrative Code § 8-107 .......................................... 3

New York City Administrative Code § 8-107(1)(a) ............................... 56

New York City Administrative Code § 8-107(6) .................................... 56

New York City Administrative Code § 8-107(7) .................................... 56

Plaintiff-Appellant Lorraine Gittens—Bridges (hereinafter "Plaintiff" or "Gittens") appeals from a final judgment dated and entered on March 30, 2022 which granted the motion by Defendants-Appellees (hereinafter "Defendants") for summary judgment and which dismissed the instant matter in its entirety.

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 in that Plaintiff appeals from a final judgment rendered by the United States District Court for the Southern District of New York (Ramos, J.) that dismissed the instant matter in its entirety.

This appeal is timely since final judgment was entered on March 30, 2022 (SPA 091)[1] and Plaintiff filed her Notice of Appeal on April 14, 2022.

## ISSUES PRESENTED FOR REVIEW

1.     Were Plaintiff's claims that she was subjected to a hostile work environment properly dismissed where she was subjected to derogatory comments related to her age, denied advancement with the DOC, assigned work below the level of the civil service title she had held for more than 20 years, and then falsely accused of absenteeism, lack of experience, and inadequate job performance?

---

[1]     The Appendix filed on behalf of Plaintiff is referenced here as "A.___"; and the Special Appendix which includes the June 11, 2020 and March 30, 2022 Memoranda and Orders below as well as the March 30, 2022 final judgment is referenced as "SPA___."

1

2.    Were Plaintiff's claims of disparate treatment based on age properly dismissed where:

(a)    She was the only one of eighteen passing candidates in the New York City Department of Correction ("DOC") on Exam 5517 for promotion to Administrative Staff Analyst who was not selected for promotion despite her nearly 30 year history of significant, often high-level, and exemplary work in the DOC and where at least 13 of the candidates selected were younger than Plaintiff was;

(b)    There were, at a minimum, disputed questions of fact as to whether Defendants' alleged non-discriminatory reasons for singling Gittens out for non-promotion were pretextual;

(c)    Gittens, prior to the establishment of the Exam 5517 promotional list, was turned down for provisional promotions in 2014-2015 in favor of predominantly younger, less experienced, and less qualified candidates; and

(d)    Gittens was subjected to derogatory comments related to her age by DOC managers.

3.    Were Plaintiff's claims of retaliation properly dismissed where she and others in her DOC unit were subjected to adverse employment actions (including but not limited to Plaintiff's non-selection for promotion) after complaining to DOC management about age discrimination?

4.      Did the Court below err in dismissing Plaintiff's claims against

Defendants Simon, Wynter, Pinnock, and Pemberton in their individual capacities?

STATEMENT OF THE CASE

Plaintiff commenced this action on or about January 9, 2019 pursuant to,

inter alia, the Age Discrimination in Employment Act ("ADEA"); the New York

City ("NYCHLR") and New York State ("NYSHRL") Human Rights Laws, New

York City Administrative Code § 8-107 et seq. and New York State Executive

Law § 296 et seq.; and 42. U.S.C. § 1983.

A.      Plaintiff's Background and Employment by DOC until 2014

Plaintiff was born on July 3, 1961 (SPA 051) and was therefore between the

ages of 52 and 57 during the times relevant to this matter.

Plaintiff has been employed by the DOC since 1986. A. 372; SPA 051. She

was initially hired as an Office Associate, and then, after passing the applicable

promotional exams, was promoted first to Principal Administrative Associate

("PAA") in 1988 and then to PAA II in 1989. A. 0322. In 1993, Plaintiff was

promoted to Associate Staff Analyst after having taken and passed a promotional

examination for that title. SPA 051.

Between the time of her promotion to Associate Staff Analyst in 1993 and

the arrival of Deputy Commissioner (and later First Deputy Commissioner) Dina

3

Simon in September 2014, Gittens served in a number of high-level and highly important capacities in the DOC.[2]

From 1993 to 2011, Plaintiff was the Section Supervisor of the DOC's Personnel Division Recruitment and Certification Section. In this capacity, Plaintiff assisted in the hiring process from civil service lists. A. 0323. During much of this same period, Plaintiff also served as Acting Assistant Director of Personnel. A. 0323.

From 1993 to 2011, Plaintiff unofficially served as the DOC Career Counselor. A. 0327. She was then officially recognized as DOC Career Counselor from June 30, 2011 until September 2014. Id.

Plaintiff's duties in these capacities included supervising and training staff, overseeing recruitment and hiring, editing agency advertisements, and preparing reports and drafting correspondence for senior management. A. 0043, 0323.

Most of the above has been acknowledged by Defendants. Thus, Deputy Commissioner Simon herself confirmed that Plaintiff had been in charge of HR Recruitment (A. 2310); former DOC Deputy Commissioner of Human Resources, Labor Relations, and Training Alan Vengersky stated in a June 30, 2011

---

[2]    In light of the outrageous disappearance of Plaintiff's personnel files covering the period 1986-2014 (see, e.g., A. 0139-0141) and Defendants' acknowledgment that the "pre-2013" files are missing (A. 0211-0213), and in the absence of any contrary testimony or documentation, Plaintiff's testimony about the nature of her assignments and the quality of her work pre-2014 should be credited.

4

memorandum that Plaintiff had been DOC Career Counselor since at least September 1998 (A. 2302); and Plaintiff's then supervisor Garland Barretto reported in a September 8, 2014 e-mail that Plaintiff on that date was still the DOC Career Counselor (A. 2306).

In and before 2013, Plaintiff received performance evaluations that consistently rated her as "Outstanding." A. 0042. Prior to 2014, Plaintiff received numerous awards throughout her career, including "Employee of the Month." A. 0043. She also received letters of commendation for her professional services and work in the community. Id.

Following the arrival of Defendant Simon in 2014, Plaintiff received no evaluations for years. A. 0042. The first Tasks and Standards she received after Simon's arrival in 2014 were for the period July 2018 to December 2018. A. 0941-0942.

B.  The Arrival of  Simon and the Removal of Plaintiff's Duties

Defendant Dina Simon was appointed DOC Deputy Commissioner in charge of Personnel, Labor Relations, and Timekeeping in September 2014. A. 1099. She became the DOC's First Deputy Commissioner in October 2015. A.1104-1105. She was hired by DOC Commissioner Ponte to change the "culture" of the agency. A. 1104-1106.

Almost immediately upon the arrival of Simon, Plaintiff's duties were substantially reduced. On September 16, 2014, Plaintiff's role as Career Counselor was removed (A. 2308-2309) and she was replaced by Carolyn Maraj, a much younger (18 years younger) employee (SPA 053; A. 0327). The job of writing up Step I disciplinary hearings was also taken from Plaintiff and given to Ms. Maraj. A. 1207-1208.

By the time Plaintiff's later supervisor Mr. Audwin Pemberton was hired by DOC in March 2015 (A. 1503-1504), Plaintiff's duties had been reduced to completing routine personnel forms [22Rs—records of information about DOC employees—(*see* SPA. 061, fn. 26)] and writing up command disciplines (A. 1553). The Court below aptly characterized these as "essentially clerical tasks." SPA 061. There is considerable confusion in the record as to whether Plaintiff should be deemed to have been in some sense "demoted." Simon initially testified at her deposition that Plaintiff was never demoted (A. 1181), but then flip-flopped and said the opposite. A. 1397. Pemberton, by contrast, was consistent in testifying that by the time of his arrival after the reduction of most of Plaintiff's higher-level duties, she was no longer performing the duties of an Associate Staff Analyst. A. 1593-1594, 1666. As will be seen, these diminutions of Plaintiff's duties by Defendants were to be a primary if not the exclusive alleged rationale for

not promoting her to Administrative Staff Analyst (the promotional title just above Associate Staff Analyst).

Defendants have purportedly lost virtually all of the documents previously contained in Plaintiff's Personnel file covering the period 1986 to some date in 2014. A. 0211-0213. In these circumstances, Defendants' claims of Plaintiff's supposed lack of experience in the very areas in which she had long served, such as recruitment, supervision, and human resources, should not be given any credence. It is grossly unfair for Defendants to exploit their own (at best) sloppy record-keeping as a way of bolstering their false claim that Plaintiff was not advanced or promoted because of her alleged lack of qualifications. As discussed below, Defendants have used this excuse to prevent Plaintiff's efforts at advancement even when she passed a promotional exam that further demonstrated her fitness for promotion.

### C. Plaintiff's Applications for Higher-Level Duties

Given the reduction in many of her duties, and since no civil service promotional exam for advancement to Administrative Staff Analyst (the title above Associate Staff Analyst) was held until June 2015 (SPA 064), Plaintiff in late 2014 and early 2015 applied for several provisional positions, any one of which would have increased her duties (and in some cases restored her to work she had previously performed for much of her career at DOC before Simon's arrival).

(1)    Director of Recruiting

On or about October 17, 2014, shortly after the arrival of Defendant Simon,

Defendants posted an opening for the position of Director of Recruiting.  A. 2971.

As noted above, Plaintiff had years of experience in DOC in the area of

recruitment.  See supra at 4.  Plaintiff duly applied for the Director of Recruiting

position on October 20, 2014.  A. 2899-2901.  She was scheduled to be

interviewed for the position by Ms. Simon (A. 2902-2903) but instead was

interviewed by Ms. Maraj (Ms. Simon's subordinate).  SPA 054.  Incredibly, and

despite Plaintiff's long experience in recruiting for DOC, Ms. Maraj's interview

notes (on which Defendants rely) stated that Plaintiff had inadequate managerial

and supervisory skills to be considered for the position.  A. 2921.  The job was

instead given to Lakisha Grant who was age 43 and thus ten years younger than

plaintiff[3] and had only earlier that same year begun to work for DOC (A. 2907), as

compared with Plaintiff's 28 prior years of DOC experience.  After receiving Ms.

Maraj's assessment of Plaintiff's qualifications, Simon decided not even to

interview Plaintiff.  A. 1367.

---

[3] The DOC Employee Profile for Ms. Grant (A. 2909) gives her age as "48," but it
also gives her date of birth as 1971, and thus the reference to age 48 must come
from a later time.

(2)     <u>Recruiting Manager</u>

Also in October 2014, the DOC posted openings for two Recruiting

Manager positions.  SPA 054.  Despite her experience in the field of recruiting,

Plaintiff was again by-passed when two other candidates were selected and

appointed on January 26, 2015.  SPA 054-055.  One of these candidates, Diane

Crotti, was older than Plaintiff.  SPA 054.  The, other, Chikera Beckford, was born

in 1977 and was thus 16 years Plaintiff's Junior.  A. 2930.  Beckford had not

previously been employed by DOC when she was selected for this position.  A

2927-2929.

(3)     <u>Project Manager</u>

In late December 2014, Defendants posted an opening for the position of

Project Manager/HR Organizational Learning and Development.  SPA 055.

Plaintiff duly and timely applied for the position in early January 2015.  <u>Id.</u>  In

response to Plaintiff's application, Christine Allen, one of Ms. Simon's reports,

wrote that to Ms. Simon falsely stating that Plaintiff had "no training or project

management experience to speak of" and that Plaintiff's application was in fact a

"time waster."  A. 2931-2933.  That Simon gave any credence to this report is

bizarre given that Simon herself testified at her deposition that to her knowledge

Ms. Allen had never worked with Plaintiff and had no idea whether Allen had any

personal knowledge of Plaintiff's capacity.  A. 1373-1374.

When Plaintiff was interviewed for the job by Ms. Barretto, the latter stated that she thought that Plaintiff "had checked out" (*i.e.,* was ready to retire).  A. 0533[4]

Ms. Simon opted not to select anyone for the position.  Instead, the position was later re-posted as "Computer Specialist" (a nomenclature likely to attract younger rather than older candidates).  Plaintiff, as Defendants no doubt wanted and expected, did not apply for this latter position.  SPA 055.

D.    Plaintiff's Complaints at the May 29, 2015 "Town Hall" Meeting

At a May 29, 2015 "Town Hall" meeting with Ms. Simon, Plaintiff and other older staff members complained about the practice of hiring younger, less experienced employees.  The testimony in the record is conflicting concerning whether Simon lost her temper at these criticisms and had to be physically restrained.  [*Compare* the testimony of Gittens (A. 0329-0330) that Simon had to be physically restrained from attacking one of the complainers and that of Mykel Isbel that Simon became "confrontational" and behaved unprofessionally (A. 2487-2489), with that of Simon who insisted that she did not become violent at all and never had to be physically restrained (A. 1235-1236, 1239)].  In any event,

---

[4]    The record is unclear whether this interview and comment was in connection with this Project Manager position or with Plaintiff's June 2015 application for the HR Special Projects position (discussed below at pp. 11-12).

within a month of the May 29 meeting, two of the complaining employees were transferred out of their unit.  A. 0330.

When Plaintiff expressed her concern to Simon about what she perceived as age discrimination, Plaintiff recalls that Simon said to her "Don't worry mommy. If you have a problem, you know my door is open."  A. 0401.

On July 15, 2015,[5] several weeks after the Town Hall meeting, Plaintiff took Simon up on her offer and came to her office to express her chagrin about being repeatedly passed over for positions for which she believed she was best qualified. A. 0407.  Simon professes not to recall what was said at the meeting.  A. 1331-1332.  According to Plaintiff, Simon told her that it had been reported to her that Plaintiff had been demoted and then told Plaintiff to leave her office.  A. 0407-0408.

E.    Plaintiff's Further Applications for upgrades

(1)    HR Special Projects

On June 3, 2015, shortly after the May 29, 2015 "Town Hall" meeting, Plaintiff applied for the HR Special Projects position.  SPA 058-059.  Once again, Plaintiff was by-passed and the younger Chikera Beckford (see supra at 9) was selected in July 2015.  Id.

---

[5]    The Decision below gives this date as July 23, 2015.  SPA 060.

Simon's explanation for not selecting Plaintiff for this job was that Plaintiff had been "demoted" and was no longer performing recruitment duties. A1397. In other words, since Simon had recently removed many of Plaintiff's duties, she used the reduced role she had afforded Plaintiff to by-pass her in favor of a much younger candidate who had only been working at DOC for about seven months.

    (2)    <u>Director Strategic Partnerships and Community Engagement</u>

Also on June 3, 2015, Plaintiff applied for the position of Director of Strategic Partnerships and Community Engagement. SPA 059. Plaintiff once again was not selected, and the job was given to 33-year old Armand Fabrice. SPA 059, A. 2893. Mr. Fabrice had not previously worked for DOC or indeed for any other New York City agency. A. 2939-2940. Ignoring Plaintiff's years of experience in hiring, recruitment, editing agency advertisements etc. (see supra. at 4), Simon testified that she preferred Mr. Armand because of his greater "experience." A. 1380.

    (3)    <u>Director of Human Resources</u>

On June 12, 2015, Defendants posted an opening in the position of Director of Human Resources. SPA 059. Given Plaintiff's prior experience, including her 18 years prior service as Section Supervisor of Recruitment and Certification and as Acting Assistant Director of Personnel (see supra at 4), one might have thought she would surely have had the inside track for this job. Instead, however,

Defendants chose Darlene Martinez (born 1976—fifteen years after Plaintiff) (A. 2892) who had not before worked for DOC and who had just over six years' experience in Human Resources.

Martinez resigned in January 2016. SPA 059, and Defendants then selected Ayinde Williams (SPA 059) who had applied but not been selected for the Director of Recruiting position back in October 2014 (A. 2913-2915) and who had been hired months earlier to work in the DOC's Applicant Investigations Unit. A. 0546. Williams' precise age does not appear in the record, but the Amended Complaint alleges that he was "much younger" than Plaintiff. A. 0051. Plaintiff never saw a re-posting for this position (A. 0546-0547), and none appears in the record.

F.   Plaintiff's Supervision by Audwin Pemberton

Audwin Pemberton was hired by DOC in or about March 2015. A. 1503. He retired in April/May 2019. A. 0514. For much of the intervening period, he directly and/or indirectly supervised Plaintiff's work. Plaintiff's immediate supervisor from November 2014 until August 2016 was Aiysha Muhammad-Suluki. SPA 061. Beginning in August 2016, Pemberton became Plaintiff's immediate supervisor. A. 0370.

On November 16, 2015, Ms. Muhammad-Suluki told Plaintiff in writing that "You have been doing a great job and I really appreciate your assistance." A. 2315. Despite this glowing overall assessment, Defendants and the Court below

have made much of the fact that on one single occasion, on March 28, 2016, Ms. Muhammad-Suluki emailed Plaintiff about certain incomplete tasks (SPA 062), and on July 18, 2016, held a corrective interview with Plaintiff concerning mistakes she perceived Plaintiff had made in updating certain spreadsheets (A. 2316). Ms. Muhammad-Suluki, however, stated that no further action—much less any formal disciplinary charges—would be taken. Id. While these were at most mild criticisms, Defendants have suggested that this minor occasion of a supervisor counseling her subordinate somehow provided grounds for ignoring Plaintiff's entire prior career and singling her out for non-promotion.

Pemberton's attitude toward Plaintiff was—to say the least—hostile. Ignoring Plaintiff's duties and achievements at DOC before September 2014, and ignoring the fact that Plaintiff had been serving as an Associate Staff Analyst since 1993, Pemberton testified that he did not consider her to be qualified for promotion because she was not (when he was her supervisor) even doing the work of an Associate Staff Analyst. A. 1586. He acknowledged, however, that he never assigned Plaintiff any work within the job description of an Associate Staff Analyst (A. 1587), and that Plaintiff wanted "do to more." A. 1594. In other words, Pemberton limited Plaintiff to lower-level duties despite her extensive employment history with the DOC, and then—as will be seen—nixed her opportunity for promotion based on the fact that she was performing lower level

14

duties.  Pemberton admitted that Plaintiff asked him to find her a job elsewhere in DOC where she would be performing work at the level of her title (Associate Staff Analyst).  A. 1578-1579.

Pemberton also admitted at his deposition that he had referred to Plaintiff as an "old school secretary."  A. 1595.  As Deputy Commissioner Simon conceded at her deposition, this was not appropriate language.  A. 1187.  Pemberton, however, in an effort to dulcify his outrageous remarks, stated at his deposition that what he said was "nothing derogatory."  A. 1595.  He went on to testify that by "old school secretary" he meant that Plaintiff did things "differently than the new millennials" and that "an old school secretary is a better secretary" and that "people these days cannot write, they cannot formulate a sentence…"  A. 1596-1598.  Pemberton purported not to know that Plaintiff had previously performed work at a far higher level than the work he gave to her.  A. 1599.

G.     Plaintiff Passed over for Promotion to Administrative Staff Analyst

In June 2015, the City administered both a promotional (Exam 5517) and an open competitive[6] examination for the title of Administrative Staff Analyst.  SPA

---

[6]     A promotional examination is open only to candidates in the lower title in a direct line of promotion, in this case Associate Staff Analyst.  A. 2818.  An open competitive exam is open to anyone otherwise fulfilling the requisite qualifications even if not serving in the lower title.  The list from the promotional exam is used first.  Since here, as is often the case, both the promotional and open competitive exams have the same questions (see, e.g., A. 0448), candidates passing one exam necessarily pass the other.

064.  Gittens passed the exam.  Id.  The eligibles' list was established on August

17, 2016.  SPA 007.  Plaintiff was one of eighteen successful DOC candidates on

the promotional list.  A. 2709-2710.[7]  Every passing candidate on the list other than

Plaintiff was selected from the list and promoted to Administrative Staff Analyst.

SPA 064; A. 1305.  The promotions of others and the non-selection of Plaintiff

occurred on October 17, 2016.  A. 1961-1963.

Plaintiff appeared as No. 14 on the Exam 5517 eligibles' list.  A. 2710.

Among the candidates promoted were Mr. Pemberton himself (who received the

same grade on the exam as Ms. Gittens but was ranked No. 13 based on whatever

tie-breaking methodology the City used on this exam).  The three passing

candidates on the list who received lower grades than did Plaintiff on Exam No.

5517 and who ranked No. 15, No. 16, and No. 17 were all promoted.  Pemberton

was promoted rather than Plaintiff even though he did not fulfill the requirement of

having at least a baccalaureate degree (A. 1629) as is required by the job

specification for Administrative Staff Analyst.  A. 2818.   On any reading of the

record, Plaintiff was singled out for non-selection despite her long years of DOC

service and even though three of the candidates promoted had lower scores and one

---

[7]    Although the DOC promotional list in the record (A. 2709-2710) reflects only
17 passing candidates, the Decision below correctly stated that there were 18
successful DOC candidates (SPA 064).  The discrepancy is that an 18th candidate,
Ms. Dahlia Grant (who received the same grade as Plaintiff and Pemberton on the
exam), was later added to the list as No. 14.5.

did not even qualify to take the promotional exam and one was taken from the open competitive list.

Notably, Simon also took the exam for promotion to Administrative Staff Analyst but apparently failed to achieve a passing grade.  A. 1331.

Pemberton testified that he made the decision not to select Plaintiff to be promoted to Administrative Staff Analyst because, in his view, the work she was performing (*i.e.,* the work he assigned her) was not at the level of Associate Staff Analyst.  A. 1571-1572.  In his view, this rendered Plaintiff unqualified for promotion from Associate Staff Analyst to Administrative Staff Analyst.  A. 1570-1571.  Pemberton acknowledged, however, that Plaintiff was intellectually capable of doing the work of an Administrative Staff Analyst.  A. 1576.[8]  Pemberton's decision not to recommend Plaintiff for promotion and the steps he took to block her advancement was based upon his mistaken belief that since (in large part thanks to him) she was not performing the work of an Associate Staff Analyst she was not qualified to be an Administrative Staff Analyst.  A. 1577.

Pemberton's written explanation for not selecting Plaintiff for promotion was: "I did not select Gittens to be promoted for obvious reasons."  A2320-2322.

---

[8]    Plaintiff, it should be noted, testified at her deposition that Pemberton told her that she was not eligible for promotion because of the lower level work she was doing and because he did not believe she was intelligent enough to be an Administrative Staff Analyst.  A. 0440.

17

Defendant Pinnock, the DOC Deputy Commissioner for Human Resources starting in April 2016 (A. 1803-1804), contradicting Pemberton, testified at her deposition that the "determining factor" in Plaintiff's non-selection for promotion was Assistant Commissioner Claudette Hamilton,[9] A. 1982-1983.  Hamilton testified that the decision not to promote Plaintiff was "mostly based" on issues of attendance.  A. 0787.  She also testified that the only person who ever complained to her about Plaintiff was Pemberton.  Id.  As is discussed below (see infra at 45-46), the "attendance issues" cited by Defendants relate either to time for which Plaintiff received approved leave, or periods that long post-dated the October 17, 2016 decision not to promote Plaintiff and which therefore could not possibly have played any part in any good-faith decision to pass Plaintiff over for promotion.

Although the decision not to select Plaintiff for promotion was made on or about October 17, 2016 (A. 1963), Plaintiff did not learn that she had been passed over until June 2017 (A. 0445).

H.    Plaintiff's EEOC Charge

On October 20, 2017, Plaintiff filed a charge of discrimination with the EEOC.  A. 2947-A. 2951.  In this charge, Plaintiff alleged age discrimination in

---

[9]    Ms. Hamilton was previously known as Claudette Wynter before her 2019 marriage.  For this reason, the Court in its decision below referred to her by her married name of Hamilton in its March 30, 2022 Decision (SPA 048), and we follow that nomenclature here even though she is referred to as "Wynter" in the Court's June 11, 2020 Decision and in other places in the record.

her non-selection from the Exam 5517 eligibles' list as well as in the prior actions of Defendants in passing her over for earlier provisional positions that would have negated any possible contention that Plaintiff was not performing the duties of at least an Associate Staff Analyst.

On October 11, 2018, Plaintiff was issued a Right-to-Sue Letter by the EEOC. A. 2952.

I.     The Proceedings Below

Plaintiff commenced this action on January 9, 2019 alleging, inter alia, violations of the New York City Human Rights Law ("NYCHRL"); the New York State Human Rights Law ("NYSHRL"); the Age Discrimination in Employment Act ("ADEA"); and 42 U.S.C. §1983. The complaint was amended on April 16, 2019, and the Second Amended Complaint was filed on August 5, 2019. In her complaint, Plaintiff alleged age discrimination, retaliation, and a hostile work environment.

On September 18, 2019, Defendants moved to dismiss.

(1)     The ruling on the motion to dismiss

In an Opinion and Order dated June 11, 2020 (SPA 001-047), the Court below granted Defendants' motion to dismiss with respect to:

(a)     Plaintiff's retaliation and failure to promote claims under the ADEA with respect to conduct predating December 24, 2016;

(b)     Plaintiff's claims under the 14th Amendment and pursuant to §1983 based on conduct predating January 9, 2016;

(c)     Plaintiff's claims under the NYCHRL and the NYSHRL based on conduct that preceded October 20, 2014;

(d)     Plaintiff's *Monell* claims;

(e)     Plaintiff's Due Process claims; and

(f)     Plaintiff's claims of retaliation based on the filing of this lawsuit.

The June 11, 2020 Decision otherwise denied Defendants' motion to dismiss.[10]

Plaintiff does not contest any portion of the June 11, 2020 Decision on this appeal.

The June 11, 2020 ruling effectively disposed of Plaintiff's ADEA claims, since such claims other than (f) above, all involved actions by defendants that pre-dated December 24, 2016.  This Decision, however, left intact: (i) all of Plaintiff's NYCHRL and NYSHRL claims based on her non-selection for the various positions for which she applied in 2014-2015, all of which occurred after October 20, 2014; (ii) all of Plaintiff's claims under the City and State Human Rights Laws and under U.S.C. §1983 based on: (a) the retaliation she suffered after her May 2015 and July 2015 complaints of age discrimination; (b) her claims of age discrimination and retaliation relating to her non-selection from the Exam 5517 list

---

[10] The June 11, 2020 Decision also denied a motion to strike filed by Defendants and a motion for leave to amend filed on behalf of Plaintiff.

for promotion to Administrative Staff Analyst; as well as (c) her claims of hostile work environment relating to conduct post-dating October 20, 2014.

    (2)    <u>The March 30, 2022 Opinion and Order granting Defendant's Motion for Summary Judgment</u>

On October 20, 2020, Defendants moved for summary judgment on all of Plaintiff's remaining claims. In an Opinion and Order dated March 30, 2022 (SPA 048-090), the Court below granted this motion in its entirety.

With regard to Plaintiff's claims of disparate treatment based on age in connection with her non-selection on Exam 5517 and her non-selection for the provisional positions for which she applied, the Court applied the burden-shifting framework set forth in <u>McDonnell Douglas Crop. v. Green</u>, 411 U.S. 792, 802 (1973) ("<u>McDonnell Douglas</u>"). A. SPA 073. Under this standard, the Court "assumed" that Plaintiff had made out a *prima facie* case and thus proceeded to the next stages of the <u>McDonnell Douglas</u> standard, finding that defendants had "proffered legitimate, nondiscriminatory reasons for not promoting plaintiff," and that Plaintiff had not produced evidence supporting her claim that "age was the but for cause or even a motivating factor in the fact that she was not promoted." SPA. 077.

With regard to Plaintiff's non-selection on Exam 5517, the Court stated that of the 17 individuals selected from the list, 16 were over the age of 40 and four of whom were born in 1961 (Gittens' year of birth) or earlier. SPA 077. With regard

to the provisional positions for which Plaintiff was not selected, three[11] were approximately her age.  SPA 078.

With regard to Plaintiff's claim that her non-selection on Exam 5517 or for the three provisional positions for which she applied after May 29, 2015, the Court stated that Plaintiff had not stated a *prima facie* claim of retaliation, i.e., that because she was the best qualified applicant.  SPA 085-086.  The Court further stated that even if Plaintiff could be deemed to have established a *prima facie* case, "Defendants have established legitimate nondiscriminatory reasons for their decisions not to promote or hire Gittens," and the evidence Gittens proffers "is insufficient to establish that retaliation was the but for cause of those actions or even that it had any causal connection." SPA 087.  The Court also claimed that an inference could be drawn against Plaintiff to the extent "gradual adverse job actions began well before the plaintiff ever engaged in any protected activity." SPA 086.

With regard to Plaintiff's hostile work environment claims, the Court found that the "'old school secretary' and 'mommy' comments" were "at most petty slights, insufficient to support a hostile work environment claim even under the NYCHRL standard.  SPA 089.

---

[11]    One of these three was Defendant Hamilton who was selected for the position of Assistant Commissioner of Human Resources.  See SPA 078.  Plaintiff, however, does not on this appeal claim that Hamilton's selection was based on age discrimination.

In a Judgment dated March 20, 2022, Defendants' motion for summary judgment was granted and the case was closed. SPA 091.

(3)    The Deficiencies of Plaintiff's Prior Attorney

No discussion of the proceedings below would be complete without mentioning the problems created by the behavior of Plaintiff's prior attorney. The Court outlined most of the deficiencies of Plaintiff's prior counsel below in a lengthy footnote (Footnote 3) in its March 30, 2022 Opinion and Order. SPA 049-051. Much as we disagree with the rulings contested on this appeal, we recognize and acknowledge the patience shown by the Court below when confronted with the morass of errors, incorrect citations, submission of patent hearsay, and repeated delays by prior counsel, and we applaud the Court below for its efforts to parse the voluminous record "to ensure that Gitten's claims receive thorough and just consideration" notwithstanding the deficiencies of her counsel.

The Court, after enduring the delays and what can only be deemed outrages by prior counsel, directed counsel to provide Plaintiff with a copy of an August 27, 2021 Order outlining some of the problems created by the conduct of her attorney. Counsel was required to file an affirmation that she had provided Plaintiff with a copy of the August 27, 2021 Order by September 1, 2021. No such affirmation was ever provided. SPA 072. As a result, Plaintiff was entirely unaware of the

23

errors in her representation until the issuance of the March 30, 2022 Opinion and Order.

In light of the behavior of Plaintiff's counsel, the Court below struck many of the pleadings filed on Plaintiff's behalf, including the declaration of non-party witness Carol Porter, portions of the declaration of Althea Cicero, as well as the entirety of "Plaintiff's Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 and Plaintiff's Additional Statement of Facts." SPA 050-052.[12]

Of course, parties are generally responsible for the acts of omissions of their attorneys. The cases to that effect are legion. See, e.g., David v. United Fruit Co., 402 F. 2d 328 (2d Cir. 1968). However, the more the improper conduct was the fault solely of counsel in representing his or her client rather than any personal obstruction by the party or any effort to benefit the party's strategic interests, the more any sanction should be imposed on the lawyer. Dodson v. Runyon, 86 F. 37, 40 (2d Cir. 1996); Henry v. Morgan's Hotel Group, Inc., 2018 WL 502711, *14 (S.D.N.Y. 2018). Shifting the target of the sanctions here is particularly appropriate where counsel—in direct violation of the direction of the Court—failed to apprise Plaintiff of what was transpiring, leading the Court in its effort to protect Plaintiff's rights to go so far as to stay the action for eight weeks to allow further

---

[12]    To the extent these documents contained inadmissible hearsay, we of course do not dispute the Court's refusal to consider such evidence.

time for Plaintiff's counsel to complete her response to Defendants' motion for summary judgment and/or for Plaintiff to retain substitute counsel. Had Plaintiff been informed of this Order by her attorney as required by the Court, she could have taken effective action and hired another attorney before her attorney engaged in further dilatory conduct (after having already received at least nine extensions of the time to respond to the motion for summary judgment) by exceeding the additional eight weeks time afforded by the Court. In these circumstances, it is unfair for the sanctions to prejudice only Plaintiff.

Fortunately for Plaintiff, even with all of the exclusions provided for by the Court below, there remain sufficient documents in the record to show that summary judgment was inappropriate.[13]

THE APPLICABLE STANDARD

The Court below aptly articulated the general standard to be applied in considering a motion for summary judgment. SPA 069-071. As stated by the Court, summary judgment is only appropriate where all of the materials in the record show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a)-(c).

---

[13] The "Appendix" and "Special Appendix" filed by prior counsel on this appeal are hardly things of beauty, but since the Court accepted these prior to the retention of our firm, and since they contain the portions of the record we have chosen to cite, we have—to avoid needless additional cost to Plaintiff in preparing a new Appendix—decided not to prepare and file any new or additional Appendices.

ADEA claims as well as those brought under the NYSHRL are subject to similar forms of analysis. Abu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466 (2d Cir. 2011). See Raffa v. Am. Nat. Red Cross, 2011 WL 6019436, *2 (N.D.N.Y. 2011). As such, NYSHRL claims, like ADEA claims, are analyzed under the McDonell Douglas burden shifting framework. Id. Plaintiff must first establish a *prima facie* case by a preponderance of the evidence. Holcomb v. Iona College, 521 F.3rd 130, 138 (2d Cir. 2008). Nominally, this means that a plaintiff in an age discrimination case must show that: (1) [s]he was within the protected age group; (2) [s]he was qualified for the position; (3) [s]he was subjected to adverse action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See, *e.g.*, Terry v. Ashcroft, 336 F. 3d 138, 138 (2d Cir. 2003). In age discrimination claims, however, the *prima facie* requirements are not strictly construed. Getschmann v. James River Paper Co., Inc., 822 F. Supp 75 (D. Conn. 1993). The burden of proof is *de minimis*. Dister v. Continental Group, Inc., 859 F. 2d 1108, 1114 (2d Cir. 1988).

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendants to articulate a legitimate, non-discriminatory reason for its actions. Luciano v. Olsten Corp., 110 F. 3d 210, 215 (2d Cir. 1997). Once the defendants presents such a reason, the burden shifts to the plaintiff "to demonstrate

that defendant's articulated reason for its decision is in fact a pretext for discrimination." Id.

In cases asserting discrimination claims under the NYCHRL, however, a more liberal standard must be applied as compared with the ADEA and NYSHRL standards. See Williams v. New York City Hous. Auth., 61 A.D.2d 62,66, 872 N.Y.S.2d 27 (1st Dept. 2009), lv. denied 13 N.Y. 3d 702, 2009 WL 2622097 (2009). A motion for summary judgment in NYCHRL cases may only be granted if the defendant demonstrates that it is entitled to summary judgment under both the McDonnell Douglas burden-shifting framework and the "mixed-motive" framework. Hudson v. Merrill Lynch & Co., Inc., 138 A.D. 3d 514, 31 N.Y.D. 3d 3, 7 (1 Dept. 2016); Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 113; 946 N.Y.S.2d 27 (1st Dept. 2012); Gregorian v. New York Life Ins. Co., 211 A.D. 3d 711, 180 N.Y.S. 36 206, 210 (2 Dept. 2022). The "but for" requirement applied in ADEA and NYSHRL claims is no longer applicable.

Under the "mixed-motive" framework, "the question of summary judgment is whether there exist triable issues of fact that discrimination was one of the motivating factors for the defendant's conduct." Williams, 61 A.D. 3d at 78, n. 27, 872 N.Y.S. 2d 27. Thus, and unlike the ADEA and NYSHRL standard, if an employer articulates a purportedly non-discriminatory reasons for its actions, the plaintiff opposing a summary judgment motion need only raise a material issue as

27

to whether the adverse action was motivated at least in part by discrimination. Under the NYCHRL, a plaintiff can satisfy this burden to by offering 'some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete." See Bennett v. Health Mngt Sytems, 92 A.D. 3d 29, 45, 936 N.Y.S. 2d 112 (1st Dept. 2011); Watson v. Emblem Health Servs., 158 A.D. 3d 179, 183, 69 N.Y.S. 3d 595 (1st Dept. 2018).

## SUMMARY OF ARGUMENT

Plaintiff here raises claims of age discrimination under both the NYSHRL and the NYCHRL. The Court below failed to apply the applicable standards correctly in assessing Plaintiff's claims that she was denied promotions and relegated to duties below her civil service title because of her age.

Plaintiff was one of 18 Associate Staff Analysts who passed Exam 5517 for promotion and was passed over for promotion while every other candidate on the Exam 5517 promotional list was hired. This followed actions by defendants that reduced Plaintiff's duties and ignored her prior nearly 30 years of exemplary service for the DOC. This in turn was followed by at least five instances in which Plaintiff was not selected for provisional promotions for which generally younger and less experienced candidates were selected.

The Court below found that Plaintiff had established a *prima facie* claim of age discrimination, but then mistakenly concluded that she had failed to raise any

28

material facts to establish pretext after defendants articulated what they claimed were their nondiscriminatory reasons for each instance of the adverse treatment Plaintiff suffered. As discussed below, Plaintiff raised material facts tending to refute Defendants' contentions that should have precluded summary judgment under either the NYSHRL standards and especially under the more liberal NYCHRL standards, i.e., that age was at least one of the motivating factors for the adverse actions Defendants took against her.

Similarly, Plaintiff presented proof with regard to her retaliation claims that the adverse actions taken against her were based, in part if not in whole, on her protected conduct in May and July 2015 in opposing what she perceived as age discrimination. The evidence Plaintiff has cited, at the very minimum, raised triable issues precluding summary judgment under the NYSHRL standard and most certainly under the NYCHRL if the "mixed-motive" standard is applied.

Lastly, Plaintiff presented extensive testimony about the hostile work environment to which she was subjected by Defendants. The Court below improperly dismissed Plaintiff's hostile work environment claims on the basis that the only such conduct that had any nexus to Gittens' claims of age discrimination were a comment by Defendant Simon referring to Plaintiff as "mommy" and one by Plaintiff's supervisor Pemberton that Plaintiff was an "old school secretary." SPA 078-079. In fact, these two comments, which the Court mistakenly

29

characterized as "at most petty slights," were barely the tip of the iceberg of the

hostile conduct to which Plaintiff was subjected.  Moreover, the Court below

overlooked the context in which the above comments were made (i.e., the stripping

of most of Plaintiff's higher level duties from her) which reveal that these were far

more than "petty slights."

Perhaps even more seriously, the Court overlooked the other evidence

in the record of the hostile, age-based, and demeaning treatment and behavior to

which Plaintiff was subjected.

ARGUMENT

POINT I

<u>THE COURT BELOW SHOULD NOT
HAVE DISMISSED PLAINTIFF'S
CLAIMS OF HOSTILE WORK
ENVIRONMENT</u>

While the actions of Defendants in repeatedly rejecting Plaintiff's bids for

promotion probably constitute the most serious wrongdoing alleged in this action,

we begin our argument by analyzing Plaintiff's hostile work environment claims,

since they help supply the background and context for the acts of age

discrimination discussed in Point II, <u>infra</u>.

Contrary to what the Court below suggested (SPA 089), the hostile work

environment relating to her age experienced by Plaintiff went far beyond the

instances in which Deputy Commissioner Simon referred to her as "Mommy" or in

which Pemberton called her an "old school secretary," bad as these comments

were. What the Court below failed to consider was the context in which these

comments were made and the outrageous degradation of Plaintiff's work and job

experience that they reflected.

Prior to the arrival of Deputy Commissioner Simon in September 2014,

Plaintiff had compiled a long and remarkable career at DOC (more fully described

at pp. 4, <u>supra</u>). Plaintiff was a 28-year veteran employee at the time Simon first

came to the DOC. After several promotions, Plaintiff had advanced to Associate

Staff Analyst in 1993, and had served in that promotional title for 21 years prior to
Simon's arrival. As an Associate Staff Analyst, Plaintiff had served in a number of
high-level and important capacities. She had been Section Supervisor of the
DOC's Personnel Division Recruitment and Certification Section from 1993 to
2011. During much of this same period, Plaintiff had also served as Acting
Director of Personnel. Beginning in 1993, Plaintiff unofficially served as DOC's
Career Counselor. And then in 2011, Plaintiff was officially recognized as the
DOC's Career Counselor, a role in which she continued to serve until September
2014. As previously discussed (see supra at 4-5), Defendants have acknowledged
most of this prior background.

Under Simon, however, these higher level duties were systematically
removed from Plaintiff, relegating her to lesser tasks that Pemberton was able to
characterize as not being the work of an Associate Staff Analyst and which—in his
view—disqualified her for consideration for promotion to Administrative Staff
Analyst.

Every day she came to work once Simon and then Pemberton were
supervising her, Plaintiff was seen by her colleagues as occupying a lower and less
respected position. This was humiliating for someone who had dedicated so much
of her life to serving the DOC and the City in important and high-level roles. The
record is conflicting as to whether Simon deemed what she had done to Plaintiff to

32

have been a "demotion," but on any construction Plaintiff had been—and was seen to have been—downgraded significantly.

When her duties were thus reduced, Plaintiff applied for open (provisional) slots that would have brought her to the level of at least Associate Staff Analyst and more likely to the level of Administrative Staff Analyst.  See supra at 7-10, 11-13.  Whether these denials constituted age discrimination is discussed below in Point II.  What is significant on the issue of whether Plaintiff had been subjected to a hostile work environment is the effect of Plaintiff's reduced duties not only in the way she was perceived by her peers but also on how she was treated by Simon and Pemberton.

It was after Plaintiff's first three applications for higher-level assignments were denied in favor of less experienced candidates that she complained to Deputy Commissioner Simon at the May 29, 2015 "Town Hall" meeting, and it was after Plaintiff was turned down three additional times for positions with higher responsibility that were instead given to much younger candidates with far less (and in some cases no) prior experience with the DOC that Plaintiff went to see Simon in her office in July 2015.  It was in connection with Plaintiff's complaints to Simon that she was being by-passed based on her age that Simon said to her on May 29, 2015: "Don't worry mommy."  This was thus not simply a stray comment,

but one made after Plaintiff had been downgraded and by-passed in favor of younger, less experienced candidates.

The hostile work environment created by Pemberton was even more intense. He gave her work, including but not limited to the later tasks and standards he created for her (after unconscionably not issuing any tasks and standards for her for years) that both he (A. 1571-1572) and Plaintiff (A. 577-578) recognized were below the level of her Civil Service title of Associate Staff Analyst. As Gittens recounted at her deposition, Pemberton consistently treated her and other older long-time DOC employees with little short of contempt, often ignoring them, complaining about their work, and giving overtime only to younger employees. A. 0466-0472. His reference to Plaintiff as an "an old school secretary" was, far from merely a random, stray comment as suggested by the Court below, since it—far from being some off-hand chatter—was set forth in writing in response to a request by Deputy Commissioner Simon for an "assessment" of Plaintiff. A. 2310.

Pemberton doubled down on his "old school secretary" evaluation of Plaintiff by telling her that she was not qualified for promotion to Administrative Staff Analyst because of her limited duties and that in any case she was "not intelligent enough" to be an Administrative Staff Analyst. A. 0440.[14] Pemberton made this absurd and humiliating claim about Plaintiff even though he and she

_____

[14]    As noted above, Pemberton at his deposition denied making this statement. A. 1576-1577.

34

received the identical grade on the exam for Promotion to Administrative Staff Analyst and he finished one spot above her only based on the tie-breaks used on that exam.  A. 2709-2710.  And, as is discussed below (See infra at 45-46), these comments by Pemberton were far from the end of his harassment of Plaintiff, which included outrageous and patently false claims of attendance problems.

    In making a determination whether a plaintiff was subjected to a hostile work environment, the Court must, under the ADEA and the NYSHRL, determine whether the workplace was sufficiently permeated with discriminatory intimidation, ridicule, and insult to alter the plaintiff's conditions of employment. Davis-Garrett v. Urban Outfitters, 921 F. 3d 30, 41, 45 (2d  Cir. 2019).  In making this determination, the Court should not consider the record piecemeal but rather must consider the evidence in the aggregate.  Davis-Garrett, 921, F. 3d 45 [citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S. Ct. 2091, 147. L. Ed. 2d 105 (2000)].  In the case of the NYCHRL, as the Court below recognized (SPA 088), liability can be imposed even if the conduct was not pervasive, since questions of severity and pervasiveness go only to consideration of the scope of permissible damages but not to the question of underlying liability. Bermudez v. City of New York, 783 F. Supp. 560, 579 (SDNY 2011).

    In indicating whether a comment is probative of discrimination rather than a non-probative "stray remark," a Court must consider: (1) whether the remark was

35

made by a decision-maker or supervisor; (2) whether the remark was made in connection with an employment decision; (3) the context of the remark. Henry v. Wyeth Pharms. Inc., 616 F. 3d 134, 149-150 (2d Cir. 2010); Tomassi v. Insignia Fin. Grp. Inc., 478 F. 3d 111, 115 (2d Cir. 2007).

Under the above standards, and especially under the NYCHRL standard, Plaintiff has more than adequately stated a claim for hostile work environment. The comments by Simon and Pemberton were made by supervisors/decision-makers in the context of their actions in reducing Plaintiff's duties and blocking her every effort at promotion or upgrade. And the reduction of Plaintiff's duties was not a one-time event that occurred on a single day or a stray comment, but was rather the way Plaintiff was treated over a period of years.

The atmosphere which Plaintiff had to endure was further described by Althea Cicero, another employee who served under Ms. Simon but who reported to Defendant Wynter and Dahlia Grant as well as to Mr. Pemberton. The Court below discounted Ms. Cicero's Declaration (A2579-2584) on the grounds that the obnoxious comments to her were primarily made by a different supervisor, non-party Dahlia Grant (SPA 051). But the issue here is the environment in which Plaintiff worked and which Simon and others fostered, whether reflected in comments and actions by Simon, Pemberton, Simon's subordinate Grant, or others.

Ms. Cicero's Declaration in fact decisively supplements the evidence already recounted. Ms. Cicero reports that she was subjected to age-based discriminatory comments by not only Ms. Grant but also by Defendant Hamilton (Pemberton's boss).[15] A. 2580.

When Ms. Cicero asked Ms. Grant about a title and salary change, she suggested that Cicero retire. A. 2580. She warned Ms. Cicero that she would be bringing in a younger employee, Ms. Dominique McGuire, who was a no-nonsense person who would be "whipping asses" and so Ms. Cicero should "consider retiring beforehand." Id.

Ms. Cicero went to Defendant Hamilton to complain about her demotion in salary. Hamilton's response was that Cicero should "count yourself lucky you still have a job," and then told Cicero that she "should consider retirement." A. 2581.

After this meeting with Hamilton, Ms. Cicero continued to receive abuse at the hands of Ms. Dahlia Grant,[16] who told her that the DOC "didn't need old people" but instead wanted "young people to work in this place." A. 2582. Ms. Grant went on to tell[17] Ms. Cicero that within the next few years she would be a Deputy Commissioner and would "get rid of me and my older co-workers." Id.

---

[15]   Ms. Cicero refers in her Declaration to Defendant Hamilton by the latter's maiden name, "Wynter."

[16]   We give here Ms. Grant's first name so she will not be confused with Ms. Lakisha Grant. See supra at 8;and infra at 48.

[17]   This testimony by Ms. Cicero is not hearsay, since it is offered to document what was said to her and not for the truth of what Ms. Grant or Ms. Hamilton said.

She also yelled at Ms. Cicero on one occasion "I have to get rid of you, why don't you just leave this place, this place is for young people." A2583.

As later happened with Plaintiff, Ms. Cicero was then falsely accused of poor performance, in her case an accusation (which Cicero disproved) of embezzlement. A. 2582.

Taken in its totality and in context, Plaintiff presented a clear case of hostile work environment. To the extent Defendants contest some of her allegations, Plaintiff at the very least presented material facts sufficient to defeat a motion for summary judgment.

## POINT II

### THE COURT SHOULD NOT HAVE DISMISSED PLAINTIFF'S AGE DISCRIMINATION CLAIMS BROUGHT UNDER THE NEW YORK CITY AND NEW YORK STATE HUMAN RIGHTS LAWS

The Court below dismissed Plaintiff's disparate treatment age discrimination claims because, in the Court's view, "she has not established that age discrimination was the but-for cause, or even that it played any role" in Defendants' decisions to remove all of her higher level duties; to decline to select her for any of the high-level assignments for which she applied; and to single her out as the only passing candidate not to be selected on Exam 5517 for promotion to Administrative Staff Analyst. SPA 076-078.

As the Court below itself recognized, the "but for" test is not the correct standard in evaluating age discrimination claims under the NYCHRL.  SPA 074-75.  But the liberal NYCHRL standards go much further than the Court below suggested.  As noted above (see supra at 27-28), a plaintiff can prevail and defeat a motion for summary judgment under the NYCHRL to the extent there are triable issues of fact as to whether discrimination was even one of the motivating factors for a defendant's conduct.  Williams, 61 A.D. 3d at 78, n. 27, 872 N.Y.S. 2d 27.  Such a plaintiff will defeat a motion for summary judgment by offering 'some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete."  See Bennett v. Health Mngt Sytems, 92 A.D. 3d 29, 45, 936 N.Y.S. 2d 112 (1st Dept. 2011); Watson v. Emblem Health Servs., 158 A.D. 3d 179, 183, 69 N.Y.S. 3d 595 (1st Dept. 2018).

Judged by these standards, the ruling below that Plaintiff did not satisfy her burden of showing pretext was simply wrong.

In considering the various adverse ways in which Plaintiff was treated in and after 2014, an obvious question arises: What happened?  Plaintiff was lauded and recognized for her skills and dedication to the job for the first approximately 28 years of her employment by DOC.  Then, however, beginning in late 2014, she was repeatedly downgraded and denied opportunities for promotion and advancement.

The answer to the conundrum is patently obvious: Plaintiff got older. When she was promoted to Associate Staff Analyst in 1993, she was 32 years old. When Simon arrived in 2014, Plaintiff was 53 years old. As should be clear from a recitation of the pre-textual reasons offered by Defendants to support what they did to Plaintiff, Defendants were happy with Plaintiff when she was in her 30's and 40's, but no longer wanted Plaintiff to continue to have important duties when she reached her 50's. This, it seems, was the way Simon and others executed the mandate of DOC Commissioner Ponte to change the agency's culture.

A.    Non-selection from the Exam 5517 list for promotion

Plaintiff took and passed Exam 5517, receiving the same score as Pemberton and a higher score than four members of the list who were promoted. A. 2709-2710. There can thus be no question that Plaintiff was qualified for promotion to Administrative Staff Analyst, Pemberton's contrary comments and testimony notwithstanding. Plaintiff was nonetheless not selected for promotion on October 17, 2016. A. 1963.

The Court below, however, claimed that there was "no evidence that [the reason] Gittens was not selected for promotion...was age discrimination. SPA 077. The Court cited the fact that 17 of the candidates selected were over the age of forty, and four were born in 1961 or earlier. Id. But it was hardly surprising that most of the candidates were older than 40, since this was a senior position for

40

which only employees who had already attained the rank of Associate Staff Analyst were eligible. In this regard, the fact that only four of the promoted employees was Plaintiff's age or older hardly negates the possibility of age discrimination, especially where Pemberton—who claims that it was he who made the decision not to select Plaintiff from the Exam 5517 promotional list (A. 1571)—made the outrageous ageist comment in his written evaluation of Plaintiff that she was an "old school secretary." In these circumstances, and given that Plaintiff was the one and only passing candidate not promoted, it is impossible to say that Plaintiff cited "no evidence" that age was at least a motivating factor. When taken in the context of the age-based hostile environment to which Plaintiff was subjected (see Point I, supra) and the fact that Plaintiff had been repeatedly by-passed for promotion for at least five positions in 2015 (see infra at 7-10,11-13), there was more than sufficient evidence presented below for Plaintiff to withstand summary judgment. Indeed, the Court below acknowledged that the fact that many of the other successful candidates were over 40[18] did not preclude an age discrimination claim by Plaintiff, "particularly since many of the individuals listed were ten or more years younger than Gittens." SPA 077, fn. 43.

The Court also cited Pemberton's supposed "legitimate reason" for declining to recommend Plaintiff for promotion based "on [Plaintiff's] job performance."

---

[18]    Age 40 is the threshold under the ADEA. There is no such age cut-off or limitation in the NYCHRL or the NYSHRL.

SPA 077.  In so holding, however, the Court overlooked the NYCHRL standard that if even one of the proffered reasons given to explain the allegedly discriminatory action were false then summary judgment is precluded.  See supra at 27-28.

The reason given by Pemberton himself—that Plaintiff because of her then current work assignments was not performing work at the level of an Associate Staff Analyst (A. 1571-1572) was at a minimum misleading and "incomplete" if not utterly false.  Plaintiff had, on any reading of the record, been performing work at or above the level of Associate Staff Analyst from 1993 to September 2014.  The fact that Simon and later Pemberton chose to remove those duties from her could not possibly be sufficient for anyone to conclude that Plaintiff was not qualified to serve as an Associate or Administrative Staff Analyst.  Even if this reduction in her duties was not in itself an act of age discrimination, it was ludicrous, pretextual, and false for Pemberton to suggest that her most recent assignments somehow disqualified her for promotion.  It was also grossly unfair for Pemberton to raise this issue given the disappearance of Plaintiff's personnel files for any periods preceding some unspecified date in 2013.  See, e.g., A0211-A0213.[19]

---

[19]    Pemberton's written explanation for not selecting Plaintiff was that "I did not select Gittens for obvious reasons." A. 2320-2322.

The claim that Plaintiff had performance problems flies in the face of the November 16, 2015 statement by her direct supervisor Muhammad-Suluki to Plaintiff that "You have been doing a great job and I really appreciate your assistance." A. 2315. Pemberton, on whose decision not to select Plaintiff the Court below entirely relied, only became Plaintiff's direct supervisor in August 2016. A. 0370. Ms. Muhammad-Suluki, who unlike Pemberton never referred to her as an "old school secretary," was Plaintiff's direct supervisor from November 2014 to August 2016. A jury would thus be well within its discretion in according more credence to Ms. Muhammad-Suluki's assessment of Plaintiff than to that of the unquestionably biased Pemberton.[20] Similarly, a jury could reasonably give less weight to Pemberton's assessment in his July 20, 2015 e-mail to Simon in which he called Plaintiff an "old school secretary without computer skills" and said that her work was "slow" (A. 2310) than to the impression of Ms. Muhammad-Suluki, especially under the NYCHRL standard.

More fundamentally, the notion that Plaintiff was not performing adequately flies in the face of the fact that she was never the subject of disciplinary charges or of a substandard evaluation. If Plaintiff had truly not been doing her job,

---

[20]    As noted above, and as Defendants and the Court below mentioned (SPA 062), Ms. Muhammad-Suluki on one occasion held a corrective interview with Plaintiff about certain incomplete tasks she perceived Plaintiff had made in updating certain spreadsheets. A. 2316. That Ms. Muhammad-Suluki did not deem this of much import is apparent from her decision to take no further action, much less recommend any formal disciplinary charges. Id.

Defendants would have some contemporary documentation to substantiate this point.

The Court below suggested that Pemberton could not be deemed to be biased based on age since he and Plaintiff were approximately the same age.  SPA 078.  But the notion that older men cannot prefer to have younger women serving in the role of "secretary,"[21] is plainly and obviously false.

Pemberton cited some instances in which Plaintiff was supposedly late in completing certain personnel forms.  A. 1550.  His testimony, however, makes it clear that this related to the middle of 2018 (Id.), and thus could not possibly have any bearing on Plaintiff's non-selection for promotion in October 2016.  Moreover, Plaintiff denies all such allegations, raising at least an issue of fact even if this could somehow be deemed relevant to why Plaintiff was passed over approximately two years earlier.

Defendant Hamilton testified that she thinks that the decision not to promote Plaintiff off the Exam 5517 promotional list was primarily based on her attendance.  A. 0787.  Pinnock claimed that Plaintiff was an employee "who did not often come to work."  A. 2079, 2139.  Hamilton suggested that Plaintiff's corrective interview was related to problems with her attendance.  A. 0894.  But

---

[21]    Plaintiff was, of course, an Associate Staff Analyst and not a "secretary" as Pemberton chose to refer to her.

this is all patently pretext, and the record demonstrates that attendance[22] could not possibly have been the basis for the decision not to promote Plaintiff, who was never once disciplined for any attendance issues in her career with the DOC.[23]

Hamilton testified that the only person to complain to her about Plaintiff was Pemberton. A. 0787. Pemberton, however, did not begin to supervise Plaintiff until August 2016. There are only two discrete attendance issues concerning Plaintiff's attendance presented in the record, neither of which could plausibly have been the reason she was passed over.

In August-September 2016, Plaintiff was running for political office. She requested three weeks off from Monday, August 29 to Friday, September 16, 2016 so she could focus on her campaign. A. 2312. She duly requested "intermittent leave," and this request was approved by Pemberton on August 29, 2016. A2311. Given that the entirety of this time was approved by Defendants, it strains credulity that this could possibly have had anything to do with the decision not to promote Gittens.[24]

_____

[23]    Plaintiff was given a corrective interview for punctuality back in 1989 when there were problems with the subway that cause both Plaintiff and her co-workers difficulties in arriving at work on time. A. 0391-0392. Since, however, Defendants claims to have lost Plaintiff's personnel file, and since Defendants never mentioned this, it is evident that this had nothing to do with Plaintiff's non-selection for promotion in October 2016.

[24]    The Court below seemed to confuse the relevant facts, stating that—in addition to the intermittent leave Plaintiff sought from August 29 to September 16,

45

Pemberton also made problems for Plaintiff when she was out sick with pneumonia in December 2018-February 2019. A. 0484-0485. Pemberton claimed that Plaintiff was out an "exorbitant" amount of time. A. 1536. This, however, as Pemberton acknowledged was in late 2018 to early 2019. A. 1536. That Defendants would try to exploit Plaintiff's illness is outrageous. But it plainly had nothing to do with the October 2016 decision not to promote Plaintiff. Moreover, Pemberton's deposition demonstrates that Hamilton's unhappiness about Plaintiff's attendance and her attempt to have Plaintiff written up for this all occurred in late 2018-early January 2019. A. 1535-1536.

Defendants' reference to Plaintiff's attendance was therefore pure pretext. Under the above-cited NYCHRL standards, this false explanation concocted by Defendants itself required denial of Defendants' summary judgment motion.[25]

_____

2016 she also sought four days off from September 9-September 12. SPA 063. But this apparently is based on an error in dating in some of the documents Defendants have cited (which seem to confuse August and September). Plaintiff had been out on documented sick leave from August 9 to August 12. A2944. This had nothing to do with the leave she requested to work on her political campaign.

[25] The Court cited (SPA 053) a statement from Defendant Simon that Plaintiff was not timely completing Step I disciplinary documents. This, however, was never cited by Defendants as a reason for Plaintiff's non-selection on Exam 5177. Moreover, Simon's testimony on this point was, to say the least, confusing and unreliable. At her deposition, Simon first testified that Plaintiff's job had been Step II summaries rather than Step I summaries. A. 1147. She later flip-flopped and claimed that Plaintiff had in fact been working on Step I summaries. A. 1198. In any case, she acknowledged that she had removed this function from Plaintiff's then supervisor Ms. Barretto because she did not believe Barretto was managing the process properly. A. 1155-1156, 1199.

46

In sum, Defendants should not have been granted summary judgment on Plaintiff's age discrimination claims relating to her non-selection from the Exam 5517 eligibles' list. The suggestion by the Court below that there is "no evidence supporting" that Plaintiff's age was "even a motivating factor" (SPA 077) was thus plainly wrong.

B.      Non-selection for at least six vacancies in 2014-2015

As discussed above (see supra at 7-10, 11-13), Plaintiff applied for six positions in 2014-2015, any one of which would have brought her to a level such that she would have unquestionably been performing work at least at the Level of Associate Staff Analyst if not higher.  One of these six positions (Project Manager) was not filled.  In the case of the other five positions, four were filled by younger candidates with far less experience at DOC, and one (Recruiting Manager) was filled by two candidates, one of who was much younger than Plaintiff and the other who had never before worked for the DOC or indeed in any City position:

| Position | Person(s) Selected | Date Posted | DOB | Prior DOC Service |
|---|---|---|---|---|
| **1) Director of Recruiting** | Lakisha Grant | Oct. 17, 2014 | 1971 | 2014 |
| **2) Recruiting Manager** | (1) Chikera Beckford;  (2) Dianne Crotti | Oct. 20, 2014 | (1) 1977 (2) 1957 | (1) None[26] (2) None |
| **3) HR Special Projects** | Chikera Beckford | May 29, 2015 | 1977 | See above re Position #2 |
| **4) Director Strategic Partnership** | Armand Fabrice | May 20, 2015 | 1982 | None |
| **5) Director Human Resources** | Darlene Martinez | June 12, 2015 | 1976 | None |

As is obvious from the above table, the candidates selected for these

positions had either no prior DOC experience or, in the case of Lakisha Grant and

Chikera Bradford for her second position, no more than a year's experience with

---

[26] The Court below at one point suggested there was no evidence in the record that Bedford was younger and less experienced than Plaintiff (SPA 055). Beckford's employee profile and resume, however, which are in the record (A. 2926-2930), leaves no doubt on this point.

48

the DOC as compared with Plaintiff's nearly three decades of experience, much of which was spent as Section Supervisor for Recruiting and Certification (1993 to 2011), Acting Assistant Director of Personnel (1993-2011), and DOC Career Counselor (1993 to 2014). In light of this background, it was error for the Court below to give credence to Defendants' claims that Plaintiff had "inadequate managerial and supervisory skills" (SPA 054) or to the fact that Plaintiff's resume was no longer accurate after Simon had changed her duties. Id.

It is obvious from the above table that, with the exception of Ms. Crotti, all of the candidates selected were at least ten years younger than Plaintiff.

The Court below, in analyzing the above proof, suggested that the age differences were not as grossly disparate as Plaintiff claims because two older candidates were selected for different positions for which Plaintiff applied: Geraldine Penn (born 1964) was selected for Project Manager/HR Learning and Development; and Defendant Hamilton was selected as Assistant Commissioner of HR Operations. SPA 055-056. Throwing these two positions in the mix, however, was quite unfair. As the Court below acknowledged, Plaintiff did not allege that the selection of Penn was the basis of her discrimination claims (SPA 056, fn. 12); and the Assistant Commissioner position was plainly at an entirely different level from the other jobs in issue and should not be lumped in with the jobs Plaintiff could have been expected to receive absent discrimination.

49

Once again, Plaintiff's claims of age discrimination on this point must be considered in context of the age-biased comments of Simon and (with regard to the 2015 positions) Pemberton. Moreover, this is not a case in which an older employee was by-passed once. Here, younger candidates and less experienced candidates were selected over Plaintiff at least five times. Even if, as the Court below stated (SPA 077-078) Defendants had arguable reasons to prefer specific candidates to Plaintiff for specific positions, in the aggregate the decisions smack of age bias. Coupled with Defendants' decision to pass her over for promotion from the Exam 5177 promotional list, including three lower scoring candidates, raises at the very minimum the spectre of age discrimination. Plaintiff was entitled to her day in Court to present this evidence to a jury.

C.     The Downgrading of Plaintiff

Whether deemed a "demotion" or otherwise, there is no doubt that after Simon arrived Plaintiff was stripped of many of her former responsibilities. SPA 060, fn. 24. The testimony of Pemberton shows that, in his view, after his arrival at the DOC and through his time there, Plaintiff was no longer performing duties within the job specification of her civil service title of Associate Staff Analyst. See, e.g., A. 1571-1572, 1577. The question is why Defendants so downgraded Plaintiff from the much higher-level work she had previously performed. Plaintiff claims this effective demotion was the result of age discrimination. SPA 075.

50

Defendants have provided no even arguably sufficient explanation for the whole sale removal of Plaintiff's previous duties or why they assigned her tasks outside her job description. Pemberton, who Plaintiff testified told her she was not "intelligent" enough for such work (A. 0440), claimed that Plaintiff was unable to handle two of the computer programs used in his unit (A. 1655). Plaintiff has emphatically denied having had any problems working in these programs. A. 0328. Pemberton, however, went one step further and claimed—in testimony cited in the decision below (SPA 076-077)—that he could not arrange any training for Plaintiff because she had already been trained and therefore was not eligible for any further training (A. 1658-1659).

To the extent this aspect of Plaintiff's claims were denied based on Pemberton's otherwise unsupported testimony on this point, there was unquestionably a material issue of fact as to whether: Plaintiff was in any sense unable to handle the computer programs at DOC. In addition, the jury would have to assess whether it was plausible, even assuming *arguendo* that plaintiff was experiencing computer difficulties, that there was no way for Defendants to provide her any sort of training.

Contrary to what might appear from the ruling below, the removal of Plainiff's most significant duties did not occur in a vacuum. This reduction of status occurred in the context of a unit in which Plaintiff there were age-based

comments that themselves reflected bias, and was soon to be used by at least

Pemberton as an excuse not to select Plaintiff for promotion on Exam 5517.

<u>POINT III</u>

<u>PLAINTIFF'S RETALIATION CLAIMS</u>
<u>SHOULD NOT HAVE BEEN DISMISSED</u>

Plaintiff complained to Defendant Simon about the age discrimination to

which she believed she had been subjected. She lodged this complaint both at the

May 29, 2015 "Town Hall" meeting and again when she spoke to Simon in July

2015.

Shortly after the May 29, 2015 "Town Hall" meeting, Plaintiff applied for

three positions for which, based on her background at DOC, she was

unquestionably highly qualified. <u>See</u> Positions 3-5 on the chart on p. 48, <u>supra.</u>

These three jobs were all posted in the period May 20, 2015 to June 12, 2005, and

the positions were all filled within approximately the next month. As previously

discussed, the candidates selected for these jobs all had far less experience than did

Plaintiff.

As noted by the Court below, a *prima facie* case of retaliation is stated if: (1)

the plaintiff engaged in protected activity; (2) the employer was aware of the

protected activity; (3) the plaintiff was thereafter subjected to an adverse

employment activity; and (4) there is a nexus between the protected activity and

the adverse action. <u>See</u> SPA. 083 and cases cited therein.

52

There can be no question that Plaintiff satisfies the first three prongs of this test. The Court below did not question whether Plaintiff's complaint constituted protected activity, whether Defendants were aware of Plaintiff's very public complaint at the "Town Hall" meeting, or whether she suffered an adverse employment activity. The sole question in this regard is whether Plaintiff has adequately presented proof to establish the required nexus.

It is well-established that a causal connection between protected activity and adverse employment action can be demonstrated by showing that the protected activity was followed closely by discriminatory treatment. See, e.g., De Cintio v. Westchester Cnty. Med. Ctr., 821, F. 2d 111, 115 (2d Cir. 1987); Summer v. United Postal Serv., 899 F. 2d 203 (2d Cir. 1990); Raniola v. City of New York, 243 F. 3d 610, 624 (2d Cir. 2001). Here, Plaintiff was turned down for these three jobs within about a month of the date of her protected activity. Under these circumstances, Plaintiff has stated a claim for retaliation.

The Court below nonetheless dismissed Plaintiff's claim of retaliation based on the three positions she sought in June 2015 on the theory that since she had been rejected for three positions before her May 29, 2015 complaint, no inference of retaliation concerning the later three positions can be deemed plausible. SPA 086.

The Court's rationale for dismissing this claim, however, overlooks the other evidence presented below concerning retaliation that does not apply to the earlier position.

Plaintiff was not the only person to complain at the May 29, 2015 meeting. Ms. Jackson, Ms. Roman, and Ms. Gainey raised similar complaints on that occasion. A. 0329-0330. Within a month, both Ms. Roman and Ms. Gainey were transferred out of the unit. A. 0330. In August 2015, Ms. Jackson was served with charges and specifications based, <u>inter alia</u>, on her supposed poor performance,[27] had her work assignment changed and was sent to Riker's Island. A. 0331, 2545, 2546.

The actions taken by Defendants concerning three other employees who complained at the May 29, 2015 meeting raise a material issue of fact concerning whether retaliation was the reason for plaintiff's non-selection for positions in June and July 2015. And under the NYCHRL standard, there is certainly at least a question concerning whether Plaintiff's complaint was one of the motivating factors for her non-selection.

---

[27] She was also charged for her complaint and ensuing argument concerning a sign on Defendant Simon's office. A. 2545.

Accordingly, Plaintiff's claims of retaliation based on her May 29, 2015 complaint should not have been dismissed.[28]

## POINT IV

## INDIVIDUAL LIABILITY

The Court below dismissed Plaintiff's claims against Defendants Pemberton, Pinnock, Simon, and Hamilton[29] in their individual capacities on the theory that since the Court had found no liability for discriminatory or retaliatory conduct, or for a finding of a hostile work environment, no aiding and abetting claims were viable. SPA 089. The dismissal of Plaintiff's aiding and abetting claims thus presupposed that all of the foregoing claims were properly dismissed.

Under the NYSHRL, Executive Law § 296(6), it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the Article or to attempt to do so." This Court has read § 296(6) broadly and recognized that employees can be liable for aiding and abetting even if they lack the authority to hire or fire so long as they personally participated in the conduct giving rise to the discrimination. See Feingold v. New York, 366 F.3d 138, 157-158 (2d Cir. 2004) (holding that aiding and abetting language in the New York State Human Rights Law allowed a co-

---

[28] The other retaliation claims raised below, e.g., the claims based on alleged retaliation for filing Plaintiff's EEOC complaint and/or this litigation, are not pursued on this appeal.

[29] The claims against Defendant Barretto are not pursued on this appeal.

worker who actually participates in the conduct giving rise to the discrimination claim to found liable even though the coworker lacked the authority to hire or fire the employee).  The NYCHRL contains similar language.  See New York City Administrative Code § 8-106.

In the event this Court agrees with the contentions raised in this brief, Plaintiff's claims should be reinstated and, accordingly, the aiding and abetting claims against the Individual Defendants (other than Barretto) should likewise be reinstated.  Each of these defendants was personally involved in one of more of the adverse actions taken against Plaintiff.

Plaintiff's NYCHRL claims against the Individual Defendants should also be reinstated.  Under the NYCHRL, individuals can be sued in their individual capacities quite apart from whether they are deemed to have aided and abetted.  New York City Administrative Code ("Code") § 8-107 (1) (a) makes discrimination by individual employees, like that of employers, is unlawful and actionable.  Similarly, Code § 8-107(7) prohibits retaliation by individuals as well as by employers.  These provisions are in addition to the aiding and abetting prohibition contained in Code § 8-107(6).

Accordingly, to the extent the summary judgment in favor of the City of New York is reversed, the claims against Defendants Pemberton, Pinnock, Simon, and Hamilton should be reinstated.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse and vacate the judgment

rendered below and remand the matter to the District Court for trial.

Dated:      New York, New York
           March 20, 2023

                  GORDON, GORDON & SCHNAPP, P.C.

                By:  <u>/s/ Kenneth E. Gordon</u>
                      Kenneth E. Gordon
                      30 Broad Street, 21st Floor
                      New York, New York 10004

Of Counsel:
      Kenneth E. Gordon
      James M. Thayer

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

1.      This brief contains 12,835 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      The brief complies with the typeface requirements of Fed. R. App. P. 32(a) and the type Style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman font, size 14.

GORDON, GORDON & SCHNAPP, P.C.

By:/s/ KENNETH E. GORDON

Attorneys for Appellant
30 Broad Street, 21st Floor
New York, New York 10004
(212) 355-3200