# 22-810

## United States Court of Appeals for the Second Circuit

LORRAINE A. GITTENS-BRIDGES,

*Plaintiff-Appellant*,

*against*

CITY OF NEW YORK, CLAUDETTE WYNTER, in their individual capacities and as aiders and abettors, DINA SIMON, in their individual capacities and as aiders and abettors, NADENE PINNOCK, in their individual capacities and as aiders and abettors, AUDWIN PEMBERTON, in their individual capacities and as aiders and abettors, GARLAND BARRETO, in their individual capacities and as aiders and abettors,

*Defendants-Appellees*,

NEW YORK CITY DEPARTMENT OF CORRECTIONS,

*Defendant*.

On Appeal from the United States District Court for the Southern District of New York

---

**BRIEF FOR APPELLEES**

---

RICHARD DEARING
DEVIN SLACK
JANET L. ZALEON
*of Counsel*

June 20, 2023

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-0860 or -0817
jzaleon@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................ iii

PRELIMINARY STATEMENT ...................................................... 1

ISSUES PRESENTED FOR REVIEW ........................................... 3

STATEMENT OF THE CASE .................................................... 3

    A.  Gittens' early employment with the New York City
        Department of Correction.............................................. 3

    B.  Gittens' deficient work performance during the 2014-
        2016 period.............................................................. 6

    C.  DOC's selection of qualified older and younger employees
        for positions that Gittens also sought........................... 9

    D.  DOC's declining to promote Gittens to the Administrative
        Staff Analyst title based on her deficient work
        performance ........................................................... 14

    E.  Gittens' retaliation claim and her contention about two
        remarks from supervisors ........................................... 16

    F.  Procedural history and the district court's order granting
        summary judgment to defendants................................. 18

STANDARD OF REVIEW AND SUMMARY OF ARGUMENT ........... 21

ARGUMENT ....................................................................... 24

POINT I ............................................................................ 24

    THIS COURT CAN SUMMARILY AFFIRM BECAUSE
    GITTENS FAILS TO GRAPPLE WITH HER
    PROCEDURAL FAILURES ........................................... 24

i

## TABLE OF CONTENTS (cont'd)

**Page**

POINT II ................................................................................................ 30

IN ANY EVENT, DEFENDANTS ARE ENTITLED TO
SUMMARY JUDGMENT ................................................................ 30

A. The district court properly found that no reasonable jury
could find age-based disparate treatment, given Gittens'
performance deficiencies, and the selection of other
qualified candidates for the positions she sought .................... 30

    1. No evidence suggests age as a factor in denying
    promotion to administrative staff analyst ............................ 33

    2. Other positions were filled with qualified candidates,
    often in Gittens' age range, indicating that age played
    no role. ................................................................................. 35

    3. Gittens' inadequate job performance, not her age,
    justified the reduction of her duties. ................................... 37

B. The district court properly held that Gittens could not
establish that some of the promotions she sought were
denied in retaliation for protected activity ............................... 41

C. The district court properly found that the record shows,
at most, two stray remarks, but no hostile work
environment. .............................................................................. 44

D. The district court properly dismissed the claims against
the individual defendants ........................................................... 47

CONCLUSION ...................................................................................... 48

CERTIFICATE OF COMPLIANCE ...................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona Premium Fin. Co. v. Employers Ins. of Wausau*,
586 F. App'x 713 (2d Cir. 2014)............................................................. 29

*Baguer v. Spanish Broad. Sys., Inc.*,
No. 04 Civ. 8393 (RJS), 2010 U.S. Dist. LEXIS 69212,
2010 WL 2813632 (S.D.N.Y. July 12, 2010),
*aff'd*, 423 F. App'x 102 (2d Cir. 2011) ................................................. 33

*Bermudez v. City of N.Y.*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011) ................................................... 44

*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001)................................................................... 45

*Byrnie v. Town of Cromwell Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001)............................................................. 20, 35

*Constance v. Pepsi Bottling Co.*,
No. 03 Civ. 5009 (CBA)(MDG), 2007 U.S. Dist. LEXIS
99558 (E.D.N.Y. June 18, 2007) ........................................................... 36

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
15 Civ. 1398 (PAE), 2015 U.S. Dist. LEXIS 160351,
2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) .................................. 44, 45

*Fagan v. N.Y.S. Elec. & Gas Corp.*,
186 F.3d 127 (2d Cir. 1999).................................................................. 36

*Falchenberg v. N.Y.S. Dep't of Educ.*,
338 F. App'x 11 (2d Cir. 2009) ............................................................. 47

*Fujitsu Ltd. v. Fed. Express Corp.*,
247 F.3d 423 (2d Cir. 2001).................................................................. 23

iii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Futrell v. J.I. Case,*
  38 F.3d 342 (7th Cir. 1994) ................................................................. 36

*Genova v. County of Nassau,*
  851 F. App'x 241 (2d Cir. 2021) ................................................. 22, 26

*Gorzynski v. JetBlue Airways Corp.,*
  596 F.3d 93 (2d Cir. 2010) ................................................................. 31

*Gregorian v. N.Y. Life Ins. Co.,*
  211 A.D.3d 711 (2d Dep't 2022) ....................................................... 32

*Gross v. FBL Fin. Servs.,*
  557 U.S. 167 (2009) ............................................................................. 31

*Henry v. Wyeth Pharms., Inc.,*
  616 F.3d 134 (2d Cir. 2010) ............................................................... 40

*Holcomb v. Iona Coll.,*
  521 F.3d 130 (2d Cir. 2008) ............................................................... 23

*Hudson v. Merrill Lynch & Co., Inc.,*
  138 A.D.3d 511 (1st Dep't 2016) ................................................. 31, 32

*Kirkpatrick v. Pfizer,*
  391 F. App'x 712 (10th Cir. 2010) .................................................... 40

*Lent v. City of N.Y.,*
  209 A.D.3d 494 (1st Dep't 2022),
  *lv. dismissed*, 39 N.Y.3d 1118 (2023) ............................................. 41

*Mader v. Experian Info. Solutions, Inc.,*
  56 F.4th 264 (2d Cir. 2023) ............................................................... 22

*Margherita v. FedEx Express,*
  511 F. App'x 71 (2d Cir. 2013) ......................................................... 45

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*McElwee v. County of Orange,*
    700 F.3d 635 (2d Cir. 2012)....................................................... 23

*McMichael v. Transocean Offshore*
    *Deepwater Drilling, Inc.,*
    934 F.3d 447 (5th Cir. 2019)..................................................... 34

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
    715 F.3d 102 (2d Cir. 2013)......................................32, 33, 41, 42

*Monahan v. N.Y. City Dep't of Corr.,*
    214 F.3d 275 (2d Cir. 2000)..................................................... 29

*N.Y.S. Teamsters Conference Pension & Ret. Fund*
    *v. Express Servs. Inc.,*
    426 F.3d 640 (2d Cir. 2005).................................................25, 26

*Oklahoma Tax Comm'n v. Chickasaw Nation,*
    515 U.S. 450 (1995).................................................................. 30

*Oldenburg v. Univ. of Texas at Austin,*
    860 F. App'x 922 (5th Cir. 2021) ............................................ 40

*Orgain v. City of Salisbury,*
    305 F. App'x 90 (4th Cir. 2008)............................................... 34

*Russell v. Aid to Developmentally Disabled, Inc.,*
    753 F. App'x 9 (2d Cir. 2018) ................................................. 26

*Russo v. N.Y. Presbyterian Hosp.,*
    972 F. Supp. 2d 429 (E.D.N.Y. 2013)..................................43, 44

*Slattery v. Swiss Reinsurance Am. Corp.,*
    248 F.3d 87 (2d Cir. 2001)....................................................... 43

*Spiegel v. Schulmann,*
    604 F.3d 72 (2d Cir. 2010).................................................30, 31

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Szewczyk v. Saakian,*
   774 F. App'x 37 (2d Cir. 2019) ..........................................................35-36

*T.Y. v. N.Y.C. Dep't of Educ.,*
   584 F.3d 412 (2d Cir. 2009) .................................................................. 26

*Wanamaker v. Columbian Rope Co.,*
   108 F.3d 462 (2d Cir 1997) .................................................................. 42

*Ya-Chen Chen v. City Univ. of N.Y.,*
   805 F.3d 59 (2d Cir. 2015) ..........................................................32, 39, 42

## Statutes and Rules

Fed. R. Civ. P. 12(b)(6) .......................................................................... 18

Fed. R. Civ. P. 56 ....................................................................... 5 n.2, 23, 26

Fed. R. App. P. 30(b) ..........................................................................4 n.1

Local Civil Rule 30.1(g) ......................................................................4 n.1

Local Civil Rule 56.1 ......................................................................... *passim*

## Other Authorities

Individual Practice of Judge Edgardo Ramos § 2(c)
   (May 27, 2020), https://perma.cc/L6TL-XRKV .................................... 27

# PRELIMINARY STATEMENT

In this age-discrimination and retaliation case, now narrowed to claims under state and local law, plaintiff Lorraine Gittens-Bridges ("Gittens") challenges her non-selection for various positions, and a reduction in her responsibilities, while employed at the New York City Department of Correction. In a carefully considered 40-plus page opinion, the United States District Court for the Southern District of New York (Ramos, J.) granted summary judgment to defendants.

This Court should affirm. Gittens' appeal fails at the outset, because she acknowledges that the district court disregarded the bulk of her procedurally deficient summary-judgment submissions, and she never argues that the district court abused its discretion in that regard. In the absence of proper submissions from Gittens, the district court granted summary judgment based on defendants' Local Rule 56.1 statement and its review of the record. At the appellate stage, Gittens is not authorized to offer new contentions that she failed to provide in a proper 56.1 statement below. But that is all her opening brief offers. This Court can and should summarily affirm on this basis alone.

In any case, under any approach to the record, defendants are entitled to summary judgment dismissing Gittens' claims predicated on the New York State and New York City Human Rights Laws. Her age-based disparate-treatment claims are insufficient because she was unable to effectively, accurately, and timely complete duties commensurate with her civil service title, and when her supervisors assigned her less demanding tasks, she still did not perform adequately. Although Gittens complains that she was not selected for various internal positions while in her early- to mid-50s, not only were the candidates ultimately selected often in her age group, they were also plainly qualified—and Gittens has not come close to showing that her credentials were so superior that no reasonable person would have passed her over.

Gittens' retaliation and hostile work environment claims fail for many of the same reasons, and others. Indeed, Gittens' own account of her employment makes clear that the actions she complains of predated any protected activity by a matter of years; the consistent course of conduct before and after the alleged protected activity belies any claim of retaliation. And her hostile work environment claim rests on the slender

reed of two ambiguous stray remarks that are, at most, the sort of petty slights that cannot support a claim for relief.

## ISSUES PRESENTED FOR REVIEW

1.      Should this Court summarily affirm, where Gittens fails to grapple with her concededly deficient submissions to the district court, which led the court, in its discretion, to grant summary judgment based on defendants' Local Rule 56.1 statement and the evidentiary record?

2.      In any event, are defendants entitled to summary judgment, where, among other things, the record establishes Gittens' long-standing performance deficiencies, she has not shown that her qualifications were so superior to other candidates that no reasonable person would have passed her over for various positions, and the two ambiguous stray remarks she relies on are at most petty slights?

## STATEMENT OF THE CASE

### A.  Gittens' early employment with the New York City Department of Correction

Gittens was born in 1961, and was from 52 to 54 years old when the relevant events occurred in 2014 to 2016 (Appellant's Appendix ("A") 322). She graduated college from the Cornell University School of Industrial and Labor Relations in 1984 (Appellees' Supplemental

Appendix ("SA") SA140).[1] She began working for DOC in 1986 as an office associate, and became an associate staff analyst in 1993 (SA3-4 ¶¶ 5-8; SA142, 147-48). According to Gittens, she was the section supervisor of recruitment and certification from 1993 to 2011 and also served, for an unspecified period, as Acting Assistant Director of Personnel (SA159-60).

Despite an extensive search, Gittens' personnel file for the period before 2013 could not be located (A211-13). Gittens makes a claim, not asserted below, that in the absence of the personnel file and "any contrary testimony or documentation," her "testimony about the nature of her assignments and the quality of her work pre-2014 should be credited," while defendants' arguments about her lack of experience in areas such as "recruitment, supervision, and human resources, should not be given

---

[1] Defendants were compelled to file a supplemental appendix under Local Rule 30.1(g) because Gittens relies on the plainly inadequate appendix filed by her former counsel (*see* Br. for Appellant ("App. Br.") 25 n.13). Defendants unsuccessfully sought to negotiate the contents of a joint appendix with the former attorney as provided in Rule 30(b), but Gittens' appendix omits all the documents defendants submitted in support of summary judgment, except for the notice of motion (A137-38). Thus, appellees' supplemental appendix includes defendants' Local Rule 56.1 statement, the individual defendants' declarations, and defendants' exhibits. For reasons discussed below, these are really the only materials this Court need consider on appeal.

any credence" (App. Br. 4 n.2, 7).[2] But this newly minted claim ignores that Gittens sought no such relief below, and that her own summary judgment submissions were procedurally deficient and disregarded by the district court (*see infra* Argument Point I). In any case, Gittens' own testimony demonstrates that the personnel file would not have established her competence or experience during the period up to 2013, because she testified that her performance was not the subject of a written evaluation after the year 2000 (SA45 ¶ 332; SA139-40).[3] But even setting that aside, the record clearly documents Gittens' poor performance during the relevant period, as described immediately below.

---

[2] Gittens also improperly relies on her Rule 56(d) declaration seeking denial of summary judgment because of supposedly inadequate discovery (App. Br. 4 n.2). The district court denied that application and disregarded the declaration, on the ground that she had admitted that discovery was complete (SPA50), and Gittens' opening brief does not argue that the district court abused its discretion in this regard.

[3] Although best practices support annual evaluations, they were not generally being conducted in DOC's Human Resources department (SA45 ¶ 328; SA1433-35, 1934-39). When Dina Simon arrived at DOC in 2014, as part of a broader effort to improve the HR department's functioning, she sought to implement an evaluation system for non-uniformed employees (SA45 ¶¶ 329-31; SA1913-14, 1936). The next tasks and standards for Gittens, a necessary basis for an evaluation, were developed in 2017 and 2018 (SA45-46 ¶¶ 330, 334-40; SA1435, 1931).

## B. Gittens' deficient work performance during the 2014-2016 period

Defendant Dina Simon started working at DOC in August 2014, and served as Deputy Commissioner of Human Resources from September 2014 to October 2015, until she was promoted (SA6 ¶¶ 27-29; SA24 ¶ 169; SA1899-1900, 1905, 2006). Simon found that the Human Resources department was functioning poorly in core areas such as hiring and recruitment (SA1913-14; *see* Special Appendix ("SPA") 52-53).

In September 2014, Gittens wrote that her duties were (1) DOC Career Counselor, (2) drafting and submitting summaries of the informal Step I disciplinary conferences for non-uniformed DOC employees who had been arrested; and (3) special projects (SA6 ¶ 31; SA1587-88).[4] Simon soon learned from DOC's EEO director that career counseling was not taking place, and she wanted to provide a robust counseling program to enhance job opportunities in the agency (SA7 ¶ 40; SA1993-95, 2009-10). Thus, Simon removed Gittens as career counselor and placed Carolyn Maraj in that role (SA7-8 ¶¶ 41-43; SA1591, 1595, 2004-05,

---

[4] Gittens emphasizes that Simon, deposed six years later, initially recalled that Gittens had been summarizing Step II conferences (App. Br. 46 n.25). But Simon was shown a document that refreshed her recollection that these were Step I conferences (SA1948, 1999).

6

2007-08). DOC then announced Maraj's availability as career counselor to all employees, noting that she had a master's degree in business administration, with professional experience in "human resources, staffing, recruiting, and staff development" (SA8 ¶ 44; SA1599).

Simon also learned that there was a backlog of disciplinary conference summaries because Gittens had failed to complete most of them (SA6-7 ¶¶ 32-34; SA1948, 1955-56, 2007). Simon removed that responsibility from Gittens, and hired an attorney with human-resources experience to oversee those conferences (SA7 ¶¶ 35-38; SA1956-58, 2003).

In November 2014, Gittens was assigned to work under Aiysha Muhammad-Suluki, until Muhammad-Suluki left the agency in 2016 (SA10-11 ¶¶ 64, 66; SA141, 1640). Defendant Audwin Pemberton joined DOC in 2015 as the Director of Payroll, Timekeeping and Benefits, and managed Gittens' unit (SA14 ¶¶ 86-87; SA440, 447, 598). Pemberton, born in 1962, was essentially the same age as Gittens—about a year younger—and had worked in City agencies since the 1980s (SA436-41, 479, 1777).

7

Gittens was unable to complete tasks assigned by Muhammad-Suluki; thus, as Pemberton put it, "Muhammad-Suluki gave her the stuff that we knew she could do" (SA11 ¶ 65; SA515-16). When Pemberton arrived at DOC, Gittens was in charge of implementing requests for updated Form 22R employee profiles and working on "command disciplines" that reflected disciplinary action against uniformed employees (SA14-15 ¶¶ 91-99; SA490-92, 926). Gittens described her duties as clerical tasks beneath her civil-service title of associate staff analyst (SA276).

Pemberton and Muhammad-Suluki met with Gittens and offered her more responsibility, and Muhammad-Suluki assigned her tasks consistent with her title (SA15-16 ¶¶ 100-06; SA509, 592, 594). Gittens could not complete the assignments because she could not use various computer systems necessary, for example, to generate relevant reports (SA15-16 ¶¶ 100-06; SA592-97).

On another occasion when Gittens requested additional work, Pemberton assigned her to take minutes at staff meetings (SA23 ¶ 166; SA509-10). Pemberton found Gittens' minutes "pretty good," but she only took minutes at two meetings and then stopped taking minutes or

attending meetings (SA23 ¶ 167; SA510, 526, 539). Pemberton took this as an indication that Gittens did not want additional responsibility (SA23-24 ¶ 168; SA524, 526).

In March 2016, Muhammad-Suluki sent Gittens this email: "Lorraine the emails on all the outstanding NPAs [negotiated plea agreements] and CDs [command disciplines] must go out. I need this to be your top priority. You have received overtime for updating the charts and nothing has gone out yet. I cannot justify the amount of overtime and yet nothing has gone out to the commands. This is your sole assignment and it should not take this long to update the records. At the end of last week we received another group of CDs. I need them all printed, recorded on the chart and the emails sent today" (SA25-26 ¶ 183; SA1739). In July 2016, Muhammad-Suluki conducted a "corrective interview" with Gittens concerning these duties, and the resulting form pointed out that, despite numerous conversations, Gittens had failed to maintain accurate documentation (SA26 ¶ 184; SA1742).

## C. DOC's selection of qualified older and younger employees for positions that Gittens also sought

In 2014 and 2015, Gittens applied for several positions for which she was not selected. When she applied for the Director of Recruiting

position in October 2014, she was not selected because she was found to have inadequate managerial and supervisory skills (SA8 ¶¶ 45-47; SA1602, 1863-65). Simon testified that Gittens' resume listed duties that she had not performed for several years (SA8-9 ¶¶ 48-51; SA1602, 1864-65, 2156, 2161-63, 2200-03). Lakisha Grant, born in 1971 and in her early 40s, was hired as Director of Recruiting (SA9 ¶ 52; SA58, 1614). Grant had a master's degree in human-resources management and professional certifications, and had been a manager at two other City agencies, including the City's main personnel agency, the Department of Citywide Administrative Services ("DCAS") (SA9 ¶ 53; SA1610-11).

Also in October 2014, Gittens applied for a Recruiting Manager position that had two openings (SA10 ¶¶ 56-57; SA1617, 1621-23). Diane Crotti, who was selected for one position, was born in 1957 and was older than Gittens (SA10 ¶¶ 58-59; SA58, 1630). Chikera Beckford, who filled the other position, was about 16 years younger than Gittens (born in 1977) and had experience as a supervisor in human-resources recruitment, classification, and employee relations at DCAS and at private entities (SA10 ¶¶ 60-62; SA58, 1634, 1637).

In November 2014, Gittens applied for a Project Manager/Lead Analyst position, which was focused on implementing the City's computerized time-keeping system at DOC (SA11 ¶¶ 67-68; SA1643, 1647-49). That job was never filled, and was re-posted as a Computer Specialist (Software) position, for which Gittens did not apply (SA11 ¶¶ 69-70; SA58). Glenn Yarris was selected for that position (SA11 ¶ 71; SA58).

When the Project Manager/HR Organizational Learning and Development position was posted in December 2014, Gittens applied but was not offered an interview (SA11-12 ¶¶ 72-73; SA1652, 1656-58, 1661). DOC employee Christine Allen emailed Simon that Gittens was unqualified, as she "ha[d] no training or Project Management experience to speak of," and interviewing her would be a "time-waster" (SA1661). Simon agreed (SA1661). The successful candidate, Geraldine Penn, was born in 1964 and thus was about three years younger than Gittens (SA12 ¶ 76; 1669). Penn had years of training and recruitment experience at the City's Human Resources Administration, most recently as its Deputy Director of the Workforce Development Division/Workforce Training Operations, in which capacity she developed, planned, and administered

11

training for 15,000 employees (SA12 ¶¶ 74-75; SA1664-66). The district court noted Gittens' concession that she "ha[d] not alleged that Penn's hiring is the basis for any of her discrimination claims" (SPA56).

Gittens next applied to be Assistant Commissioner of Human Resources Operations, in April 2015 (SA12-13 ¶¶ 77-78; SA1672, 1676-78). The successful applicant, defendant Claudette (Wynter) Hamilton, born in 1961, was the same age as Gittens (SA13 ¶¶ 79, 84; SA57, 1174). Hamilton had a master's degree in human-resources management and had held several human-resources positions at the City's Administration for Children's Services (ACS), most recently as an Assistant Commissioner in ACS's Office of Personnel Services (SA13 ¶¶ 80-81; SA1682-83). On appeal, Gittens abandons any claim that Hamilton's selection was discriminatory (App. Br. 22 n.11).

Gittens also applied to be the Director, HR Special Projects, in June 2015, and Barreto interviewed her (SA18 ¶¶ 125-27; SA308, 1686, 1690-92). Gittens claims (and Barreto denies) that Barreto commented, "I didn't know you had done all this community service, I thought you had checked out" (SA18 ¶ 128; SA51, 308). Chikera Beckford applied for and was selected for the position (SA19 ¶ 129; SA58). Simon testified that

Beckford had been at DOC for about seven months, but was performing recruitment duties, whereas Gittens was not performing those duties (SA2194-98).

At the same time, Gittens applied to be the Director of Strategic Partnerships and Community Engagement, which sought to promote DOC's mission by "strengthening business and community partnerships," and increasing visibility and outreach in the community (SA19 ¶¶ 130-32; SA1695, 1699-1701). The successful candidate was Fabrice Armand, born in 1982, who had extensive experience in marketing, public relations, and advertising (SA19-20 ¶¶ 133-34, 136; SA1704-06, 1709).

The last position at issue, which Gittens sought in June 2015, was Director of Human Resources (SA20 ¶¶ 139-140; SA 1716, 1720-22). She was interviewed but not selected (SA20 ¶ 141; SA1725). The successful candidate, Darlene Martinez, was about 15 years younger than Gittens (born in 1976), and had held the same position with another City agency for roughly six years (SA20-21 ¶¶ 142-44; SA1728-30, 1733). When Martinez left in 2018, Gittens claims she did not apply because the opening was not posted, whereas Hamilton attested that the position was

13

re-posted (SA21 ¶¶ 145-46; SA57-58, 322). Ayinde Williams was selected for the position (SA21 ¶ 147; SA58). Gittens claims that Williams was "much younger" than she, but cites no evidence in support, only her second amended complaint (App. Br. 13).

**D. DOC's declining to promote Gittens to the Administrative Staff Analyst title based on her deficient work performance**

In 2015, Gittens took and passed a civil service examination, Exam 5517, for promotion to Administrative Staff Analyst (SA29-30 ¶¶ 208, 214; SA1759). Eighteen candidates at DOC passed the examination, and all but Gittens were promoted in October 2016 (SA29-30 ¶¶ 208-14; SA1770-78), as shown by the notation "CNS" for "considered and not selected" next to her name (SA30 ¶ 213; SA1777). Of the employees promoted, four were older than Gittens, including one 70-year-old; two were born the same year as she was (1961); four were a year younger, including Pemberton; three were slightly younger (born in the 1960s); and four were 10-20 years younger (SA30 ¶ 211; SA1773-78).

Gittens testified that Pemberton told her she was not promoted to administrative staff analyst because her work was substandard (SA31 ¶ 217; SA214-15). In an email, Pemberton reported that he did not

recommend her for promotion for "obvious reasons" (SA31 ¶ 218; SA1788). He testified that Gittens was not eligible for promotion because she was not performing the tasks correlated with her existing title of associate staff analyst, although she was capable of performing them (SA31 ¶¶ 219-20; SA481, 501, 509, 523-24, 617). When assigned to tasks within her title, she had timely completed them only about 30% of the time, and colleagues would complain about incomplete documents (SA31-32 ¶¶ 219, 221, 223-27; SA481-88, 501, 523-24, 617). Pemberton testified that multiple DOC chiefs had complained that the forms for which Gittens was responsible had not been updated (SA32 ¶¶ 223-27; SA482-83).

In this regard, Pemberton also testified that Gittens failed to properly notify her supervisors of her absences from work, and no one would know of assignments that were awaiting completion (SA31-32 ¶¶ 222, 228-29; SA481, 493). Hamilton described Pemberton's complaint that Gittens' absences impaired her "consistency in producing the work that was expected" (SA1290-91). Defendant Nadene Pinnock recalled that Gittens "didn't come to work," which affected her performance (SA28 ¶ 197; SA773, 1048).

About two months before the promotion decision, on August 29, 2016, Gittens, who was running for political office, requested intermittent leave through September 16, 2016 (SA27-28 ¶¶ 193, 197; SA1018, 1048, 1753). Pemberton granted the request so long as she provided advance notice of her absences and her "core work assignment must be completed and not given to another staff member to complete" (SA28 ¶ 199; SA1752). Her supervisors became concerned that Gittens was not fulfilling the agreement and, on September 14, Pemberton concluded that she was out of compliance and should be marked absent without leave for future absences (SA28 ¶¶ 200-02; SA1748, 1752).

### E. Gittens' retaliation claim and her contention about two remarks from supervisors

On appeal, Gittens alleges that supervisors made two ageist comments about her (App. Br. 29-30).[5] In May 2015, Gittens and other employees attended a town-hall meeting with Simon (SA16 ¶ 107; SA172-73). According to Gittens, she argued at the meeting that employees should be told why they were not selected for vacant positions,

---

[5] Gittens has dropped her prior claims about other statements that consisted of inadmissible hearsay (App. Br. 23-24).

so they would know how to improve, and Simon responded, "[D]on't worry, mommy, don't worry, mommy. If you have a problem … my door is open" (SA16 ¶ 109; SA176).

In a July 18, 2015 email, Simon asked Pemberton for an assessment of Gittens' work performance (SA21 ¶ 148; SA1736). Pemberton replied, "Great, but she is slow to complete tasks. However the task[s] are done correctly. She also comes to work at 10 am[.] She wants to do more. She is an old school secretary without computer skills" (SA21 ¶ 149; SA1736). The district court considered that Gittens may have been unaware of this remark, as she was not copied on the email and did not mention the comment in her second amended complaint; thus, the remark may not have affected her perception of her working environment (SPA89 n.50).

Gittens met with Simon on July 23, 2015 (SA22 ¶ 152; SA172-73, 182). When asked why she was passed over for promotion, Simon said that she had learned from Barreto that Gittens had been demoted (SA22 ¶¶ 153-54; SA182-83). Gittens maintains that, when she asked why she was demoted, the meeting came to an end (SA22 ¶ 155; SA182-83). As the district court noted, a dispute about whether Gittens was formally

demoted is immaterial, given that her duties were undisputedly reduced after 2014 and she was denied promotion (SPA60 n.24).

Gittens alleges that she suffered retaliation after the town-hall meeting because the last three positions described above were posted after the meeting, and she applied, but was not selected, for those jobs. Gittens claims she had heard that others were retaliated against after they complained at the meeting (SA16-17 ¶¶ 110-113; SA22 ¶ 157; SA185-87). On appeal, Gittens newly alleges retaliation after the July 23, 2015 meeting with Simon, but she does not specify any retaliatory conduct allegedly resulting from that meeting (App. Br. 20, 29, 52).[6]

## F. Procedural history and the district court's order granting summary judgment to defendants

Gittens commenced this action in 2019, and amended her complaint twice (SA68-127). On defendants' Rule 12(b)(6) motion, the district court dismissed numerous claims in the second amended complaint (SPA1-47). Gittens has explicitly stated that she "does not contest any portion" of that decision on this appeal (App. Br. 20). And whatever federal claims

---

[6] On appeal, Gittens has explicitly dropped her claim of retaliation in 2017-2018 for filing her EEOC charge in 2017 (SA1793-97; App. Br. 20, 52-54, 55 n.28).

might have theoretically survived that decision—whether under the Age Discrimination in Employment Act or 42 U.S.C. § 1983—Gittens has now abandoned on appeal.

Defendants then moved for summary judgment on Gittens' remaining claims, and the district court granted that motion (SPA48-90). As relevant to Gittens' arguments on this appeal from the clerk's judgment (SPA91), the district court determined that her claims could not succeed under the standards applicable to either the New York State or New York City Human Rights Laws ("NYSHRL" and "NYCHRL") (SPA73-79, 83-85, 87-89).

The court first "assume[d] for purposes of resolving this motion that Gittens has made out a *prima facie* case" of disparate treatment based on age "and proceed[ed] to the next steps of the *McDonnell Douglas* analysis" (SPA76). The court then held that "defendants ha[d] proffered legitimate, nondiscriminatory reasons for the employment actions they took," and that Gittens could not prove those reasons pretextual because she "has not established that age discrimination was the but for cause, or even that it played any role, in Defendants' decisions" (SPA76-77).

In reaching that conclusion, the court cited the ages of the employees promoted from the administrative staff analyst list and Pemberton's "legitimate reasons based on job performance for declining to recommend Gittens for promotion" from that list (SPA77). As to her non-selection for the jobs she sought, the court noted that she had longer experience at DOC than many of the individuals selected, but the court found that she failed to make the requisite showing that her credentials were "'so superior'" to those of the successful applicants that "'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question'" (SPA78 (quoting *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001)). The court concluded that defendants "ha[d] established reasonable grounds for all of their hiring and promotion decisions," as the successful candidates had "relevant educational or professional backgrounds," and three of them—Crotti, Penn, and Hamilton—were approximately Gittens' age (SPA78).

Further, the court determined that Gittens' experience of "less favorable treatment or work assignments" could not be attributed to age, especially where Pemberton was nearly her age (SPA78). The court

concluded that Pemberton's description of Gittens as an "old school secretary" and Simon's calling her "mommy" were "stray remarks" insufficient to establish age-based animus as a motive for the adverse employment decisions (SPA78-79).

The district court then held that Gittens had not established that defendants made adverse employment decisions in retaliation for protected activity (SPA85-86). The court found that "the record supports Defendants' contention that she was not selected for certain positions" before and after her complaints at the May 2015 town hall meeting "because she was not the best qualified applicant, rather than in retaliation for any protected activity" (SPA86). Nor could Gittens establish a hostile work environment, where apart from what the court found to be stray remarks, defendants' treatment of her could not be attributed to her age (SPA88-89). Lastly, the court dismissed the "aiding and abetting" claims against the individual defendants, where the court had held that no underlying violation had occurred (SPA89).

## STANDARD OF REVIEW AND SUMMARY OF ARGUMENT

The district court disregarded most of Gittens' summary judgment submissions because they failed to comply with Local Civil Rule 56.1 and

the court's individual rules of practice (SPA49-51 n.3). That determination is reviewed for abuse of discretion. *Genova v. County of Nassau*, 851 F. App'x 241, 244 (2d Cir. 2021). Gittens does not argue this standard is met here. Instead, she first acknowledges her failings below and then pretends that they never happened, presenting this Court with a series of arguments that fail to grapple with the profound shortcomings in her submissions in the district court. By never engaging with the consequences of those shortcomings, and how they limit the arguments available to her on appeal, Gittens ends up failing to identify an issue for this Court's review. The Court could stop there.

Otherwise, this Court reviews the district court's grant of summary judgment de novo, "construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in [that party's] favor." *Mader v. Experian Info. Solutions, Inc.*, 56 F.4th 264, 267 (2d Cir. 2023) (cleaned up).[7] "Summary judgment is appropriate where the record reveals that there is 'no genuine dispute as to any material fact and the movant is entitled to

---

[7] "Cleaned up" indicates the omission of internal citations, quotation marks, and editing.

judgment as a matter of law.'" *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). This Court "may affirm summary judgment on any ground supported by the record, even if it is not one on which the district court relied." *Id.*

To defeat summary judgment, the non-moving party must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (cleaned up). Thus, "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up). To be sure, this Court has "expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent," but "[e]ven in the discrimination context," the "plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137.

Here, the district court properly found that, on this record, age-based animus was not a motivating factor in the employment decisions about which Gittens complains. On the contrary, defendants provided

testimony and documentation that her duties were reduced and promotions were denied because of deficits in her work performance, as well as the contrasting qualifications of the individuals, often in her age group, who were selected for the various positions at issue. Defendants further established that her non-selection for positions was not in retaliation for her 2015 complaints to Simon, where defendants had already declined to promote her. And Gittens was not subjected to an actionable hostile work environment, where her supervisors, including Pemberton, only a year her junior, at most made two stray, ambiguous remarks. Without an underlying substantive violation, the district court properly dismissed the "aiding and abetting" claims against the individual defendants.

## ARGUMENT

### POINT I

### THIS COURT CAN SUMMARILY AFFIRM BECAUSE GITTENS FAILS TO GRAPPLE WITH HER PROCEDURAL FAILURES

Gittens' opening brief rests on a fundamental misunderstanding of the contours of this Court's review, and as a result her brief never even engages in the analysis required to identify a potential error in the district court's decision. To be sure, a summary judgment ruling is

24

ordinarily reviewed de novo. But this case is defined by the profound procedural shortcomings in Gittens' summary judgment submissions below. While Gittens nods to the problem, she largely brushes it aside and plows forward as if the problem never existed.

The starting point is this: few documents are more important to contemporary civil litigation than Local Civil Rule 56.1 submissions and their counterparts. By requiring parties to be precise about the material facts that are in dispute and to pinpoint the parts of the record supporting their views, these submissions sharpen the district court's focus and crystallize the basis for any disagreement. In the Southern and Eastern Districts of New York, compliance with Local Rule 56.1 and the corresponding rules of individual practice are critical to the fair and efficient resolution of cases and overall docket management.

Compliance is especially important in fact-intensive settings with large records, like this case. *See N.Y.S. Teamsters Conference Pension & Ret. Fund v. Express Servs. Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005). Thus, "[i]n a case such as this, containing extensive filings and voluminous exhibits," the district court does not "abuse its discretion in requiring compliance with the Local Rule and crediting as undisputed

those facts that [plaintiff] did not properly controvert," so long as "defendants properly cited to the record to support their facts" and "the district court conducted at least some scrutiny of the record." *Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 13 (2d Cir. 2018) (cleaned up).

In short, "[p]laintiffs who ignore their obligations under Local Rule 56.1 do so at their own peril." *Genova v. County of Nassau*, 851 F. App'x 241, 244 (2d Cir. 2021). Indeed, this Court has held that, "[i]n the typical case, failure to respond" to each paragraph in a Local Rule 56.1 statement "permits the court to conclude that the facts asserted in the statement are uncontested and admissible," and "results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see Teamsters*, 426 F.3d at 648 (this Court has "affirmed summary judgment rulings that enforce such [local] rules.").

Here, the district court detailed the many deficiencies in Gittens' Local Rule 56.1 submissions—including both her response to defendants' statement of material facts and her counterstatement of additional material facts—in a single-spaced, 10-point footnote that spans three

26

pages (SPA49-51), and at other points throughout its decision (*see, e.g.*, SPA54 n.7, SPA55 n.8, SPA58 n.18, SPA67 n.38). The district court properly based its determination upon defendants' Rule 56.1 statement, which included appropriate citations to supporting evidence (SPA49 n.3; SA2-46), and the court reviewed the record to confirm that defendants' factual assertions were supported—as reflected by the court's repeated citations of defendants' Rule 56.1 statement and the supporting evidence.

On appeal, Gittens attributes the deficiencies to her trial counsel's "morass of errors, incorrect citations, submission of patent hearsay, and repeated delays" (App. Br. 23). But no matter where she lays the blame, the key point here is that Gittens concedes that her submissions did not approach compliance with Local Civil Rule 56.1 and the district court's individual rules of practice. *See* Individual Practice of Judge Edgardo Ramos § 2(c) (May 27, 2020), https://perma.cc/L6TL-XRKV.

Gittens summarizes the district court's response to her 56.1 submissions as striking them in their "entirety" (SPA51; App. Br. 24).[8]

---

[8] While Gittens-Bridges maintains that the district court struck her 56.1 submissions entirely, the district court's decision could be read more narrowly, disregarding those "averments … that are not denials of the specific facts asserted by Defendant, or that are not supported by citations to admissible evidence in the record, or that are

*(cont'd on next page)*

27

In her statement of the case (but not her argument), Gittens suggests that the district court could have instead imposed unspecified sanctions on her trial counsel (App. Br. 23-25). But Gittens never actually argues that the district court abused its discretion in its treatment of her Local Rule 56.1 submissions. Nor could she.

Without Gittens' Local Rule 56.1 submissions, the crucial questions on appeal are two-fold and narrow: (1) did the district court err in crediting defendants' factual assertions in the absence of an appropriate response from Gittens? (2) crediting defendants' uncontested factual assertions, were defendants entitled to judgment as a matter of law?

Gittens' opening brief does not approach the district court's decision from that perspective. On the contrary, after indicating that her Local Rule 56.1 statements were stricken, she goes on to argue that "there

---

contradicted by the other admissible evidence in the record, or that are improper legal arguments" (SPA51 n.3). Applying that framework, the district court credited the bulk of the factual assertions in defendants' Rule 56.1 statement—at minimum, paragraphs 5-15, 17, 31-46, 48-61, 63-84, 86-91, 101-07, 110-12, 114, 125-27, 129-35, 139-41, 143-49, 152-55, 157-64, 181-88, 191-96, 198-201, 203-07, 211, 213, 216-36, 244-58, 262-63, 266-71, 273, 278-81, 283-84, 288, 290-327, 328-40. The decision explicitly considers the following paragraphs from Gittens' counter-statement of additional material facts, but the district court either did not credit the assertions or found them immaterial for various reasons: paragraphs 80-83, 102-05, 134-36, 419-48, 463-508. Gittens' opening brief does not engage in the kind of analysis that would be called for by this more targeted approach, either.

remain sufficient documents in the record to show that summary judgment was inappropriate" (App. Br. 25). Gittens may regret her choice of trial counsel, but that does not give her license to cobble together a narrative supporting her view of the case based on a roving review of the record, in support of arguments she failed to develop below. "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000); *see, e.g.*, *Arizona Premium Fin. Co. v. Employers Ins. of Wausau*, 586 F. App'x 713, 716 (2d Cir. 2014) (refusing to consider materials a party failed to properly bring to the court's attention, even though they "were part of the summary judgment record").

By failing to comply with Local Rule 56.1 and the district court's individual rules of practice, Gittens forfeited the right to dispute defendants' factual assertions, so long as those assertions find at least some support in the record; and she forfeited the right to introduce new factual assertions of her own that were not credited by the district court. Because Gittens opening brief makes no attempt to engage with these

foundational restrictions on the scope of her appeal—and because it would be too late to do so in a reply brief—the Court could stop here and summarily affirm the district court's decision. After all, an appellate court is "a court of review, not one of first view." *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 457 (1995).

## POINT II

## IN ANY EVENT, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

If the Court does not summarily affirm on procedural grounds, then it should affirm the grant of summary judgment on the merits. On appeal, Gittens raises several claims under the New York State and New York City Human Rights Laws (App. Br. 28-30). As we will show, the district court properly granted summary judgment because her claims under those statutes are insufficient.

### A. The district court properly found that no reasonable jury could find age-based disparate treatment, given Gittens' performance deficiencies, and the selection of other qualified candidates for the positions she sought.

Disparate treatment claims under both the NYSHRL and the NYCHRL are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)

30

(NYSHRL); *Hudson v. Merrill Lynch & Co., Inc.*, 138 A.D.3d 511, 514 (1st Dep't 2016) (NYCHRL). The district court assumed (though defendants do not concede), that Gittens established a prima facie case (SPA76). The district court went on to assess whether defendants met their burden of "proffer[ing] some legitimate nondiscriminatory reason for the adverse action," at which point "the presumption of discrimination … drops out of the analysis, and the defendant will be entitled to summary judgment … unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination," i.e., that the legitimate reasons are "actually pretext for discrimination" (SPA76). *Spiegel*, 604 F.3d at 80 (cleaned up).

Under this test, Gittens's NYSHRL claims could survive summary judgment if "the facts, taken in [her] favor, suffice to meet her burden of showing a triable issue as to whether her age was a 'but for' cause" of the adverse employment actions. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *see Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177 (2009) ("the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action"). Under the NYCHRL, which is broadly interpreted in favor of discrimination

31

plaintiffs, Gittens may prevail if she establishes that she was "subject to an unfavorable change or treated less well than other employees" *because of* her age. *Gregorian v. N.Y. Life Ins. Co.*, 211 A.D.3d 711, 712 (2d Dep't 2022); *see Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013).

Summary judgment is appropriate if "no triable issues of fact indicate that discrimination was one of the motivating factors for the defendant's conduct." *Hudson*, 138 A.D.3d at 514. Or, as this Court has put it, the defendant "is entitled to summary judgment … only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions." *Mihalik*, 715 F.3d at 110 n.8 (cleaned up); *accord Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015). The district court properly granted summary judgment under these standards.

Notably, Gittens asserts liability under the NYSHRL, but fails to identify evidence to raise a factual issue whether her age was a "but-for" cause of her non-promotion or reduced duties (App. Br. 39). She also assumes that merely naming "age discrimination" could defeat summary judgment under the NYCHRL (App. Br. 39-40 (alleging discrimination merely because, over the years, she got older)). But as this Court has

explained, "the NYCHRL is not a general civility code," and "district courts may still grant summary judgment with respect to NYCHRL claims if there is no genuine dispute as to any material fact." *Mihalik*, 715 F.3d at 110, 112 (also noting that state courts grant summary judgment under the NYCHRL). There is no genuine factual dispute here.

### 1. No evidence suggests age as a factor in denying promotion to administrative staff analyst.

Regarding Gittens' specific claims, the district court soundly concluded that, on this record, age-based animus played no part in Pemberton's decision not to promote her to the administrative staff analyst title from the Exam 5517 list (SPA77). Of the 17 employees who were selected for promotion, 13, or 76%, were born before 1970, and nine were born between 1954 and 1962. And Pemberton, who made the promotion decision, was only about a year younger than Gittens. As the district court recognized (SPA78), "[c]ourts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the [a]ffected employee." *Baguer v. Spanish Broad. Sys., Inc.*, No. 04 Civ. 8393 (RJS), 2010 U.S. Dist. LEXIS 69212, at *32, 2010 WL 2813632, at *11 (S.D.N.Y. July 12, 2010) (collecting cases), *aff'd*, 423 F. App'x 102 (2d Cir. 2011). Indeed, numerous courts have reached

33

that conclusion. *E.g.*, *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460-61 (5th Cir. 2019); *Orgain v. City of Salisbury*, 305 F. App'x 90, 103 (4th Cir. 2008).

Furthermore, the district court found that Pemberton had reason to decline to promote Gittens based on her deficient work performance. Pemberton, like Gittens' direct supervisor, Muhammad-Suluki, found that Gittens could not timely and accurately complete tasks that came within her existing civil-service title of associate staff analyst, or even tasks like updating "22R" employee-profile forms and command disciplines (SA11, 15-16, 481-88, 501, 509, 523-24, 592-96, 617). Indeed, three months before the decision on the promotion, Muhammad-Suluki conducted a corrective interview about Gittens' failure to perform her assigned duties (SA26, 1742). Gittens cannot overcome the evidence of that corrective interview merely because Muhammad-Suluki sent her an email praising her work several months earlier (SA168-69; App. Br. 43).

Moreover, Hamilton (who was the same age as Gittens) and Pinnock believed that attendance problems undermined Gittens' job performance (SA773, 1048, 1290-91). Indeed, Pemberton found that, in August-September 2016, prior to the October 2016 promotion decision,

34

Gittens was not adhering to an agreement concerning leave time (App. Br. 44-45). In opposition, Gittens fails to cite facts to indicate a factual dispute about age discrimination in failing to promote her from the Exam 5517 list.

### 2. Other positions were filled with qualified candidates, often in Gittens' age range, indicating that age played no role.

The district court also properly found that age was not a factor in Gittens' non-selection for the several positions she sought in 2014 and 2015 (SPA77-78). Gittens predicates her age-discrimination claim on her lengthy tenure at DOC and the fact that most of the successful candidates were new to DOC (App. Br. 8-13, 48). She ignores, and thus does not controvert, the education and experience possessed by these individuals. But to allow a reasonable trier of fact to find that differences in qualifications were a mere pretext for age-based discrimination, Gittens' credentials "would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (cleaned up); *see Szewczyk v. Saakian*, 774 F. App'x

37, 40 (2d Cir. 2019) (affirming grant of summary judgment dismissing NYSHRL and NYCHRL claims). Moreover, the fact that some successful applicants were younger than Gittens or newer arrivals at DOC does not establish age discrimination. *See Fagan v. N.Y.S. Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir. 1999); *Futrell v. J.I. Case*, 38 F.3d 342, 348 (7th Cir. 1994) ("Typically, younger workers will replace older ones; this is an unremarkable phenomenon that does not, in and of itself, prove discrimination").

In addition, Gittens now disavows her application for the Project Manager/HR Organizational Learning and Development and Assistant Commissioner of HR Operations positions, to minimize the fact that not one, but three, of the positions she sought were awarded to members of her age group—Diane Crotti, born in 1957; Claudette Hamilton, born the same year as Gittens, 1961; and Geraldine Penn, born in 1964 (App. Br. 48-49). *See Constance v. Pepsi Bottling Co.*, No. 03 Civ. 5009 (CBA)(MDG), 2007 U.S. Dist. LEXIS 99558, *52 (E.D.N.Y. June 18, 2007) (no inference of discrimination when promoted individuals were in plaintiff's protected class). Gittens' effort to re-cast the facts does not

raise a question whether the selection of others for the positions she sought can be attributed to age-based animus.

### 3. Gittens' inadequate job performance, not her age, justified the reduction of her duties.

Gittens' final disparate-treatment claim, that her duties were downgraded to tasks beneath her civil-service title, also lacks a nexus to age-based animus (App. Br. 50-52). Gittens' contention rests on her current attorney's assertion that the loss of her pre-2013 personnel records requires an assumption that her work performance was stellar during that period (App. Br. 4 n.2, 7, 31-32, 50). But this argument is unpreserved. And even setting that aside, Gittens herself established that her records would not show the nature or quality of her work, as she had not received a written evaluation after the year 2000 (SA139-40).

Moreover, when Simon started working as DOC's Deputy Commissioner of Human Resources in August 2014, she found that her department was functioning ineffectively (SA1913-14). As part of the process of improving the department, she found that employees were not seeking career counseling, and she had Maraj replace Gittens as career counselor (SA7, 1591, 1595, 2004-10). She also hired an attorney to

oversee disciplinary conferences, because Gittens was not producing the required conference summaries (SA7-8, 1948, 1955-58, 2003, 2007).

And when Pemberton arrived the next year (and, again, he was nearly the same age as Gittens), he found her work accurate but slow (SA21 ¶ 149; SA1736). He maintained her assignments of updating employee-profile forms and command disciplines, because he and Gittens' direct supervisor, Muhammad-Suluki, assigned Gittens "stuff we knew she could do" (SA11, 515-16).

Even so, they honored Gittens' request for more responsibilities in line with her associate staff analyst title, but found that she could not perform those assignments, either. Despite Gittens' denial, Pemberton identified her inability to use the necessary HR computer systems as a reason for her poor performance on those tasks (SA595; App. Br. 51). The district court pointed to Gittens' ineligibility to re-take computer training that she had already attended as a legitimate reason for defendants' employment decisions (SPA76-77).

The district court properly recognized the lack of evidence of age discrimination as a motivating factor for these determinations. As this Court has held, a court will not "sit as a super-personnel department that

reexamines employers' judgments," and Gittens' disagreement with her supervisors' assessment of her job performance does not raise a material issue of fact. *See Ya-Chen Chen*, 805 F.3d at 73, 76.

Furthermore, the fact that Gittens' supervisors did not bring her up on formal disciplinary charges (App. Br. 43) does not raise a factual issue about whether Gittens was adequately performing her work. Nor does the lack of a written evaluation after the year 2000 (App. Br. 43-44), considering that DOC was not providing evaluations for its non-uniformed employees, and that practice was something Simon sought to remedy when she arrived and found an HR department that was underperforming in core areas (SA45 ¶¶ 329-31; SA1913-14, 1936).

The only evidence in the record that could be remotely interpreted as referring to age consists of two remarks: Pemberton's email describing Gittens as an "old school secretary without computer skills," and Simon's addressing Gittens as "mommy" when saying her "door was open" to Gittens during the town-hall meeting. The district court properly did not find those stray remarks probative of a discriminatory motivation for defendants' decisions (SPA78-79).

Although made by supervisors, the remarks were not made in relation to an adverse employment decision. *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). Indeed, despite the "mommy" reference, Simon's remark at the town-hall meeting that her door was open indicated a willingness to talk with employees about promotional opportunities, though other qualified candidates received the promotions that Gittens sought.

Pemberton's remark described Gittens' performance of duties that she was already assigned when he arrived at DOC; the remark could not refer to his declining to promote her from the civil service list a year later (SA21 ¶ 149; SA1736; App. Br. 51-52). And the phrase "old school secretary without computer skills" in discussing Gittens' work performance indicates that, as Pemberton testified (SA478, 532), he was describing her "approach to the job" rather than characterizing her directly, which makes the remark "not as apparently discriminatory as others that [have been] recognized as ageist." *Oldenburg v. Univ. of Texas at Austin*, 860 F. App'x 922, 925 (5th Cir. 2021); *see Kirkpatrick v. Pfizer*, 391 F. App'x 712, 720 (10th Cir. 2010) (supervisor's "description of

[employee's] suggestions as 'old school' are the type of stray remarks that are too ambiguous to be evidence of age discrimination").

Furthermore, the NYCHRL gives an employer an affirmative defense: that "the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Mihalik*, 715 F.3d at 111 (cleaned up); *see Lent v. City of N.Y.*, 209 A.D.3d 494, 495 (1st Dep't 2022) (stray remark that plaintiff was "old enough to retire" did not lead to "inference of ageist bias"), *lv. dismissed*, 39 N.Y.3d 1118 (2023).

For all these reasons, the district court properly granted summary judgment dismissing the disparate-treatment claims.

## B. The district court properly held that Gittens could not establish that some of the promotions she sought were denied in retaliation for protected activity.

The district court properly granted summary judgment dismissing Gittens' retaliation claim (SPA85-86). Her prima facie case of retaliation under the NYSHRL requires proof that: (1) she was engaged in protected activity; (2) defendants were aware of that protected activity; (3) she "was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken."

41

*Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465, 467 (2d Cir 1997). Under the NYCHRL, the employer's action need only have been "reasonably likely to deter a person from engaging in a protected activity," but must still be at least partly caused by a retaliatory motive. *Ya-Chen Chen*, 805 F.3d at 76, *Mihalik*, 715 F.3d at 112-13. We will assume, as the district court did, that the first three factors are met. The court properly held, however, that the facts fail to show a causal connection.

Gittens alleges that she was denied promotions after her complaints about the promotion of younger workers at the May 2015 town-hall meeting and, for the first time on appeal, she cites her July 23, 2015 meeting with Simon, where she also asked about promotions (App. Br. 52-55). Gittens maintains that the retaliatory conduct was the denial of the last three positions she sought in 2015, but as the district court held, she was not selected for other positions before her 2015 complaints (SPA86). "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not

42

arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

Moreover, even if Gittens had established a prima facie case, the facts demonstrate defendants' legitimate reasons for selecting other candidates for promotion were not pretextual or even partly motivated by age discrimination. *See Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 456 (E.D.N.Y. 2013). On the contrary, as the district court found, the timing supports the inference that Gittens was not selected for positions both before and after the 2015 meetings because she was not the best qualified candidate (SPA86).

Gittens asserts that other employees suffered retaliation after the town-hall meeting (App. Br. 54). Whether or not actions taken on other factual grounds against other employees could be material to a claim of retaliation against Gittens, her claim is factually unsupported. Michelle Roman and Mary Gainey were transferred to DCAS when health-benefits functions were consolidated in that agency (SPA22-23 ¶¶ 159-63). Simon recalled that Ita Jackson failed to complete a work assignment, even before the town-hall meeting (SA2027-33).

Accordingly, the district court properly granted summary judgment dismissing the retaliation claim.

## C. The district court properly found that the record shows, at most, two stray remarks, but no hostile work environment.

On appeal, Gittens has pared down her hostile-work-environment claim to allege the two supposedly ageist remarks, the reduction in her duties, the denial of promotions, and certain supposed events involving other older employees (App. Br. 31-35). Under the NYSHRL, Gittens "must show that her workplace was 'permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993)).

Under the NYCHRL, the conduct need not be severe or pervasive, but must be unwanted and must have occurred *because of* the protected characteristic. *Erasmus v. Deutsche Bank Ams. Holding Corp.*, 15 Civ. 1398 (PAE), 2015 U.S. Dist. LEXIS 160351, at *21, 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015); *Russo*, 972 F. Supp.2d at 451-52; *see also*

*Margherita v. FedEx Express*, 511 F. App'x 71, 73 (2d Cir. 2013); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("mistreatment at work," such as a hostile work environment or denial of promotion, is actionable only when it occurs because of the employee's protected characteristic). In addition, because petty slights are not actionable under either statute, "when the conduct alleged is far from a borderline violation of the NYSHRL, then the plaintiff has failed to state a claim under the NYCHRL, as well." *Erasmus*, 2015 U.S. Dist. LEXIS 160351, at *21 (cleaned up).

As we have explained, the evidence demonstrates that the reduction of Gittens' duties and the denial of promotions are not attributable to her age, but to her work performance and the qualifications of the other applicants. Because she was unable to perform assignments at the level of her civil-service title, it is not surprising that the tasks and standards Pemberton eventually developed for her reflected lesser duties (App. Br. 34). Even assuming that Gittens felt humiliated because she could not get the positions and duties she believed she deserved, she has no claim under the Human Rights Laws where those circumstances did not result from age-based animus.

That was why the district court addressed the only arguably age-related evidence in the record, namely, the remarks from Simon and Pemberton (SPA89). As the district court indicated, Pemberton's "old school secretary" remark, contained in an email between supervisors, likely did not come to Gittens' attention before she brought this action and did not affect her working environment (SPA89 n.50). The district court aptly concluded that Pemberton's remark and Simon's calling her "mommy" were at most "stray remarks" and "petty slights" that are not actionable.

The only other source that Gittens cites is the declaration of Althea Cicero, which the district court specifically disregarded insofar as it consisted of hearsay and immaterial or conclusory assertions (SPA51; A2579-84; App. Br. 36-38). Cicero's claims are indeed immaterial, as they largely concern a supervisor, Dahlia Grant, who is not alleged to have supervised or had any involvement with Gittens, and interactions with Claudette Wynter (Hamilton) that also did not pertain to Gittens (A2580-83). And Cicero does not claim to have discussed this supposed sequence of events with Gittens. Gittens testified only that Cicero reported in late 2015 that Grant was giving her a "hard time," Cicero's salary was

46

reduced, and a younger employee was supervising her (SA203-05).[9] Gittens did not testify that Cicero told her about any interaction with Gittens' own supervisors, such as Hamilton.

Thus, the district court properly granted summary judgment on the hostile-work-environment claims.

## D. The district court properly dismissed the claims against the individual defendants.

Finally, the district court properly granted summary judgment to the individual defendants. Both the NYSHRL and NYCHRL contain provisions for "aiding and abetting" liability. But "aiding and abetting is only a viable theory where an underlying violation has taken place." *Falchenberg v. N.Y.S. Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009). Further, on appeal, Gittens makes no claims against Barreto (App. Br. 55 n.29). And although Gittens points out that the NYCHRL has provisions for individual employees' liability apart from "aiding and abetting," we have explained that the actions taken by the individual defendants did not constitute discrimination or retaliation.

---

[9] Hamilton also testified that, after Cicero did not pass Exam 5517, she was placed in the community coordinator title so that she could remain employed by the City (SA34 ¶¶ 240-42; SA1471-72).

47

Accordingly, the district court properly granted summary judgment dismissing the second amended complaint.

## CONCLUSION

The district court's judgment should be affirmed.

Dated:  New York, NY
June 20, 2023

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees

By: _____

JANET L. ZALEON
Assistant Corporation Counsel

100 Church Street
New York, NY 10007
212-356-0860
jzaleon@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JANET L. ZALEON
    *of Counsel*

48

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 9,376 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____

JANET L. ZALEON