# 22-0810-cv

## United States Court of Appeals

*for the*

## Second Circuit

———◆———

LORRAINE A. GITTENS-BRIDGES,

*Plaintiff-Appellant,*

– v. –

CITY OF NEW YORK, CLAUDETTE WYNTER, in their individual capacities and as aiders and abettors, DINA SIMON, in their individual capacities and as aiders and abettors, NADENE PINNOCK, in their individual capacities and as aiders and abettors, AUDWIN PEMBERTON, in their individual capacities and as aiders and abettors, GARLAND BARRETO, in their individual capacities and as aiders and abettors,

*Defendants-Appellees,*

NEW YORK CITY DEPARTMENT OF CORRECTIONS,

*Defendant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

GORDON GORDON & SCHNAPP, P.C.
*Attorneys for Plaintiff-Appellant*
30 Broad Street, 21st Floor
New York, New York 10004
(212) 355-3200

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ........................................................................................... 4

POINT I

THE PROCEDURAL MISDEEDS BY APPELLANT'S FORMER
COUNSEL DO NOT WARRANT THE SUMMARY DISMISSAL
APPELLEES SEEK ................................................................................ 4

POINT II

APPELLEES HAVE MIS-STATED AND MIS-APPLIED THE
LAW APPLICABLE TO APPELLANTS' AGE
DISCRIMINATION CLAIMS ............................................................... 7

POINT III

SUMMARY JUDGMENT SHOULD NOT HAVE BEEN
GRANTED ON MS. GITTENS' CLAIMS OF HOSTILE WORK
ENVIRONMENT .................................................................................. 20

CONCLUSION ..................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Bennett v. Health Mngt Systems*,
  92 A.D.3d 29, 936 N.Y.S.2d 112 (1st Dep't 2011)...................................... 1-2, 8

*Franco v. Hyatt Corp.*,
  189 A.D.3d 569, 137 N.Y.S.3d 34 (1st Dep't 2018)..............................................2

*Hudson v. Merrill Lynch & Co., Inc*,
  138 A.D.3d 511, 31 N.Y.S.3d 3 (1st Dep't 2016)................................................16

*Kops v. PPM Amer., Inc.*,
  2016 WL 7188793 (S.D.N.Y. 2016)....................................................................8

*Livingston v. City of New York*,
  563 F. Supp. 3d 201 (S.D.N.Y. 2021) ...................................................................8

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
  715 F.3d 102 (2d Cir. 2013) .................................................................................8

*Watson v. Emblem Health Servs.*,
  158 A.D.3d 179, 69 N.Y.S.3d 595 (1st Dep't 2018).........................................2, 8

*Williams v. New York City Hous. Auth.*,
  61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009), *lv. Denied,*
  13 N.Y.3d 701 (2009) ..........................................................................................1

## PRELIMINARY STATEMENT

The opposing brief of Appellees applies the wrong standard for reviewing claims of discrimination under the New York City Human Rights Law ("NYCHRL"). The NYCHRL test is not the "but for" standard Appellees claim is applicable to claims under the New York State Human Rights Law ("NYSHRL") or the modified version of that standard Appellees incorrectly attribute to the NYCHRL (*i.e.,* that a Plaintiff must "establish" that she was treated less favorably "because of her age") *See* Appellees' Brief ("AB") at pp. 32-33. Nor does it require a plaintiff alleging discrimination to show that her "credentials were so superior that no reasonable person would have passed her over." AB at p. 2. Rather, the NYCHRL standard is whether discrimination was at least one of the motivating factors. *See Williams v. New York City Hous. Auth.,* 61 A.D. 3d[1] 62, 872 N.Y.S. 2d 27 (1 Dept. 2009), *lv. Denied* 13 N.Y. 3d 701 (2009). Under the *Williams* test, a plaintiff opposing a summary judgment motion need only raise a material issue as to whether the challenged adverse action was motivated at least in part by discrimination, and can do so by offering "some evidence that at least one of the reasons proffered by defendants is false, misleading, or incomplete." *See Bennett v. Health Mngt Systems*, 92 A.D. 3d 29, 45, 936 N.Y.S. 2d 112 (1 Dept.

---

[1] At one point in our original brief (at p. 27), and in our Table of Authorities, we mistakenly gave this citation as "61 A.D. 2d 62." The correct citation is 61 A.D.3d 62.

2011); *Watson v. Emblem Health Servs.,* 158 A.D. 3d 179, 183, 69 N.Y.S. 3d 595 (1 Dept. 2018). *See also*, *Franco v. Hyatt Corp.*, 189 A.D. 3d 569, 571, 137 N.Y.S. 3d 34 (1 Dept. 2018). Appellees have utterly ignored (and failed even to cite or mention) *Williams* and its progeny and, as is discussed below, have instead merely recounted their allegedly non-discriminatory reasons for denying Ms. Gittens the promotions and positions she sought rather than responding to the demonstrations in our original brief that these reasons were in many cases at best misleading and, in most instances, demonstrably false. *See infra* at 10-20.

With regard to Ms. Gittens' claims of hostile work environment, Appellees' suggestion that these all rest "on the slender reed of two ambiguous stray remarks" (A/B at pp. 2-3) is a gross mischaracterization of what has actually been alleged. To give just one example, Appellees have not even mentioned the statement by Mr. Pemberton to Ms. Gittens that she was "not intelligent enough" to be an Administrative Staff Analyst. *See* Appellant's earlier brief to this Court ("Original Brief") at pp. 34-35. *See also infra* at 21-22. for a more complete discussion.

Also troubling is Appellees' utter disregard of two critical facts. First, the still unexplained disappearance of all of the documents in Ms. Gittens' personnel file reflecting the first 28 years of her employment (1986-2014) by the New York City Department of Correction ("DOC"). In a case in which Appellees seek to justify their failure to promote Ms. Gittens based on her supposed inadequate skill,

experience, or performance, the all-too-convenient vanishing of nearly the entirety of the DOC employment record that documented Ms. Gittens' prior performance and experience would certainly be an important factor a jury should consider in assessing whether Ms. Gittens was ever fairly considered for promotion or upgrade.

Second, the fact that Ms. Gittens was the one and only successful candidate on Exam 5517 for promotion to the title of Administrative Staff Analyst to be passed over and therefore not selected for promotion, coupled with Appellees' decision to reject every one of her other applications for upgrade despite her long history of success in high-level DOC assignments for more than a decade. Under the NYCHRL *Williams* test described above, this fact was—by itself—beyond just suspicious. This is especially the case given the number of younger persons with far less DOC experience who were advanced instead of Ms. Gittens, and given the fact that eleven (11) of the candidates promoted from the Exam 5517 list were younger than Ms. Gittens, including four who were 10-20 years younger. *See* A/B at p. 14.

Finally, while the NYCHRL *Williams* standard by itself requires reversal, for the reasons discussed herein, even if the "but-for" test Appellees cite were applied, summary judgment should not have been granted.

ARGUMENT

POINT I

THE PROCEDURAL MISDEEDS BY
APPELLANT'S FORMER COUNSEL DO NOT
WARRANT THE SUMMARY DISMISSAL
APPELLEES SEEK

Contrary to Appellees' suggestion, we have neither "brushed aside" nor ignored the repeated and unjustifiable actions of Ms. Gittens' prior attorney in grossly mishandling this case below. Nor have we or will we attempt to justify this prior misconduct. Rather, we have acknowledged this misbehavior and commended the Court below for its patience in reaching the merits of this case notwithstanding the problems created by the misbehavior of prior counsel. *See* Original Br. at pp. 23-24.

But notwithstanding this misconduct, the Court below in its March 30, 2022 Opinion and Order did not grant summary judgment because of the behavior of prior counsel and instead exercised its discretion to consider the motion for summary judgment on its merits. SPA 073.[2] By asking this Court to ignore this aspect of the ruling below and dismiss the appeal on the basis of the defaults below, Appellees are effectively contending that the Court below abused its discretion in this respect. This Court should decline this invitation.

---

[2] The Appendix and Special Appendix filed on behalf of Appellant is referenced herein as "A.___" and "SPA___" respectively. The Appendix filed by Appellees is referenced as "SA___."

Appellees also disregard one of the key reasons the Court below decided to reach the merits rather than grant summary judgment based on the misdeeds of Ms. Gittens' prior counsel.  In an order dated August 27, 2021 (more than seven months before its final March 30, 2022 ruling), the Court below described the many extensions and defaults by Ms. Gittens' prior counsel and directed that counsel to submit an affirmation confirming that a copy of the order had been supplied to Ms. Gittens.  SPA 072, fn. 39.  Had counsel adhered to this direction, Ms. Gittens would have been alerted to how badly her case had been mishandled and would have had an opportunity to seek replacement counsel.  However, no such affirmation was filed (*Id.*) and Ms. Gittens had no inkling of how improperly her matter was being prosecuted by her prior counsel.

Under these circumstances, which are never mentioned in Appellees' brief, the decision by the Court below to proceed to the merits of the case should not be second-guessed.

Moreover, and again contrary to what Appellees suggest, the claims discussed here and which we cite in seeking reversal were the very claims considered by the Court below in its March 30, 2022 decision.

Given the ruling below, Ms. Gittens should be permitted to cite the evidence in the record which the Court below considered and which we believe demonstrates that summary judgment should not have been granted.  For the

reasons set forth in our earlier brief and in this Reply Brief, there is more than

ample evidence in the record—even without considering matters stricken by the

Court below—on the basis of which Ms. Gittens should be permitted to proceed to

trial, especially on her NYCHRL claims under the *Williams* standard.[3]

    With regard to Appellees' complaint that we have somehow transgressed the

ruling below as to what can be considered, we will show here that there is more than

sufficient material in the record to support the facts and contentions set forth

in our briefs to warrant reversal.

---

[3] For reasons we cannot fathom, Appellees attempt to cast blame on us for their decision to file a Supplemental Appendix. Appellees' recitation of the events surrounding the Appendix is grossly inadequate. Contrary to what Appellees suggest (AB at p. 4, fn. 4), our office did not decline to negotiate the contents of the appendix. Rather, we discussed replacing the Appendix filed by prior counsel (which included much material that was superfluous) with a Joint Appendix that would have included the additional items Appellees wanted. Appellees, however, informed us that they would be filing their own Appendix. For whatever reason, Appellees have reproduced in their Appendix lengthy documents, including deposition transcripts, that are already included in Appellants' Appendix (for example pages 67 through 1578 of Appellees' Appendix). These duplicated documents comprise over 65% of their Appendix. Appellees are, of course, permitted to craft their own Appendix, and we have not objected to what they have filed. What we do object to is the unwarranted implication that we were less than fully cooperative in attempting to fashion a more useful Appendix for this Court.

POINT II

<u>APPELLEES HAVE MIS-STATED AND
MIS-APPLIED THE LAW APPLICABLE
TO APPELLANTS' AGE
DISCRIMINATION CLAIMS</u>

As even Appellees concede (AB at p. 31), the Court below assumed

that Ms. Gittens had established a *prima facie* case of age discrimination.  Under

these circumstances, the question then became whether Ms. Gittens raised

sufficient factual questions concerning the allegedly non-discriminatory

explanations offered by Appellees to explain the adverse actions taken against her.

Contrary to the analysis appearing in Appellees' opposing brief, the proper

standard for assessing whether summary judgment was appropriate under the

NYCHRL is not "whether [Ms. Gittens'] age was a 'but for' cause of the adverse

employment actions" taken against her or whether she can establish that she was

subject to unfavorable treatment because of her age, or whether "her credentials

were so superior that no reasonable person would have passed her over."  *See* AB

at pp. 2, 31-32.  Indeed, the Court below carefully avoided Appellees' mistake and

expressly stated that, contrary to the standard applicable to claims under the federal

Age Discrimination in Employment Act ("ADEA") and the NYSHRL, "the

NYCHRL requires showing that age was only a 'motivating factor,' rather than the

'but for cause' of an adverse employment action."  SPA 075.  Appellees are

entitled to summary judgment "only if the record established as a matter of law

that discrimination played *no* role in its actions."  (*Emphasis in the original*).
*Livingston v. City of New York,* 563 F.Supp. 3d 201, 234 (S.D.N.Y. 2021) [*quoting Kops v. PPM Amer., Inc.*, 2016 WL 7188793, at *5 (S.D.N.Y. 2016)]

As discussed above (*see supra* at 1-2), a plaintiff opposing a summary judgment motion under the NYCHRL need only raise a material issue as to whether the challenged adverse action was motivated at least in part by discrimination, and can do so by offering "some evidence that at least one of the reasons proffered by defendants is false, misleading, or incomplete."  *See Bennett, Watson, supra*.  The Court must analyze NYCHRL claims separately and independently from any state or federal law claims.  *Mihalik v. Credit Agricole Cheuvreux North America,* Inc., 715 F. 3d 102, 109 (2d Cir. 2013).  Judged by these applicable NYCHRL standards, the rationales proffered by Appellees to explain the failure to promote Ms. Gittens cannot be sufficient grounds for summary judgment.

As in their motion below, Appellees' stated reasons for not promoting Ms. Gittens consist of a hodge-podge of conflicting, misleading, and for the most part demonstrably false allegations.  We deal with the reasons appearing in Appellees' opposing brief seriatim.

Appellees first cite the fact that in September 2014, almost immediately upon her appointment to the DOC, Deputy Commissioner Simon replaced Ms.

Gittens as DOC Career Counselor with Carolyn Maraj because the Human

Resources Department was "functioning poorly."  AB at p. 6.  However, and as

Appellees nowhere mention in their brief, Ms. Simon acknowledged at her

deposition that what actually happened was that Ms. Simon decided that Ms.

Gittens' then immediate supervisor, Ms. Barretto, had—in Simons' view—not

been managing the career counseling function properly and therefore removed the

function entirely from Ms. Barretto.  A. 1155-1156, 1199.  Thus, Ms. Gittens lost

her position because of Ms. Simon's unhappiness about the performance of Ms.

Barretto.  The September 2014 decision by Ms. Simon, made before she could

have known much if anything about Ms. Gittens, cannot plausibly have been the

reason for the later adverse actions taken against Ms. Gittens which are challenged

in this litigation.

Appellees next cite a corrective interview Ms. Gittens attended in July 2016

(A. 2316) with her then immediate supervisor Ms. Muhammed-Suluki.  AB at pp.

8-9, 34.  Appellees cite this corrective interview as supposedly constituting

evidence that Ms. Gittens "could not timely and accurately complete tasks that

came within her existing civil service title of associate staff analyst."  AB at p. 34.

This reference by Appellees is at best highly misleading.  Ms. Muhammed-Suluki

was Ms. Gittens' immediate supervisor from November 2014 until August 2016.

In November 16, 2015, by which time Ms. Gittens had been performing the work

Appellees now say she was not handling in a "timely and accurate" fashion for a full year, Ms. Muhammed-Suluki told Ms. Gittens that: "You have been doing a great job…" A. 2315. Despite this, Appellees cite a July 18, 2016 Corrective Interview Form (A. 2316) in which Ms. Muhammed-Suluki mentioned "several cases" in which items were incorrectly grouped or missing as supposedly demonstrating that Ms. Gittens was not performing her job adequately. Needless to say, the fact that on one occasion a supervisor faults a subordinate does not mean the subordinate is incompetent or unable to perform his or her job. Notably, Ms. Muhammed-Suluki deemed the subject of the Corrective Interview to be of such small import that no further action was required. A. 2316. Ms. Muhammed-Suluki went on to say that if the problem reoccurred, "appropriate action will be initiated." *Id*. Since, as Appellees do not deny, there was no such follow-up, the event on which Appellees place such reliance reflects nothing beyond the fact that Ms. Muhammed-Suluki was doing her job as a supervisor and counseling a subordinate who she already recognized was "doing a great job" when she felt it appropriate to do so. Appellees' reliance on this as an explanation for passing over Ms. Gittens for promotion on Exam 5155 or otherwise denying her opportunities for promotion is thus absurd and—with regard to the promotional opportunities that were denied to Ms. Gittens between October 2014 and January 2016 (*see* Appellant's Original Brief at pp. 7-13) all of which occurred long before the July

10

18, 2016 Corrective Interview—a patently false explanation for Ms. Gittens' non-selection.  What Ms. Muhammed-Suluki wrote in July 18, 2016 could not possibly have had any bearing on why Ms. Gittens was not selected for upgrade in 2014 and 2015, and could not plausibly explain why Ms. Gittens was singled out among all the passing candidates on Exam 5155 for non-selection.  Under the NYCHRL standard articulated in *Williams, Bennett,* and *Watson,* this and other false and/or misleading explanations offered by Appellees are sufficient grounds for denying summary judgment and thus reversing the decision below.

Consideration of the rationales offered by Appellees for the various upgrades Ms. Gittens was denied in 2014 and 2015 are likewise based on false and misleading allegations.

Appellees explain the decision not to select Ms. Gittens for the position of Recruiting Manager and instead to select Ms. Lakisha Grant who was ten (10) years younger as based on Ms. Gittens' "inadequate managerial and supervisory skills" and because Ms. Gittens' resume listed duties "she had not performed for several years."  AB at pp. 9-10.  This was plainly pretext.  Ms. Gittens had no documentation beyond her resume of her extensive experience with DOC only because the DOC had (or so it claims) lost her all of her personnel files for the periods before 2014.  And Ms. Grant's resume, which Appellees trumpet in their brief, cited her duties with the New York City Department of Citywide

11

Administration (DCAS) from January 2007-2014. A. 2906-2908. Indeed, Appellees expressly cite Ms. Grant's seven year tenure at DCAS. AB at p. 10. A jury could well find this purported explanation for the non-selection of Ms. Gittens as plainly false, given that Appellees laud the much younger Ms. Grant for her seven-years work at DCAS while criticizing Ms. Gittens for her temerity in citing work she had performed "several years" ago, including her 18 years of work as a Section Supervisor of the DOC's Personnel Division Recruitment and Certification Section from 1993 to 2011.

A similar conclusion applies to Appellees' explanation for the selection of 42-year old Ms. Chikera Beckford[4] rather than Ms. Gittens for Recruiting Manager. AB at p. 10. As with the Director of Recruiting position, Appellees cite Ms. Beckford's work over the course of nearly nine years for various employers and in various capacities (A. 2926-2929) while faulting Ms. Gittens for including on her resume duties "she had not performed for several years." And once again, Appellees ignore Ms. Gittens' obviously greater experience in the area of recruitment. *See* Appellant's Original Brief at pp. 3-4.

---

[4] The fact that Appellees also selected the older Ms. Dianne Crotti as a Recruiting Manager does not negate an inference of age discrimination for by-passing the more experienced Ms. Gittens in favor of the far younger Ms. Beckford. It was inevitable, whatever Appellees' motivation, that they would have to select some older candidates for senior positions.

Appellees next blithely explain Ms. Gittens non-selection for Project Manager/HR Organizational Learning and Development (AB at p. 11) by saying that "That job was never filled." What Appellees neglect to mention is that Ms. Gittens was not selected only after Ms. Simon received a memo falsely stating that Ms. Gittens had "no training or project management experience to speak of" (A. 2931-2933) when in fact she had served in high-level DOC capacities for over 20 years. Any notion that Ms. Simon could have reasonably relied on these outrageous claims is belied by Ms. Simons' admission in her deposition that so far as she knew the author of the memo (Ms. Allen) had never worked with Ms. Gittens or had any personal knowledge of Ms. Gittens' capacities. A. 1373-1374.[5]

Appellees' account of Ms. Gittens' non-selection for the position of Director of HR Special Projects (AB at pp. 12-13) is also highly misleading. Instead, the much younger Ms. Beckford (*see supra* at pp. 13-14), who had just been appointed as a Recruiting Manager about seven months earlier (*Id.*) was selected. Appellees say in their brief that Ms. Beckford was selected instead of Ms. Gittens because "she was performing recruitment duties, whereas Gittens was not performing those duties." AB at p. 13. Yet again, Appellees fail to mention Ms. Gittens' 18 years of experience (from 1993-2011) supervising recruitment and certification (*see*

---

[5] Appellees incorrectly state that Appellant's Original Brief "disavows her application for the Project Manager/HR Organizational Learning and Development" position. AB at p. 36. Pages 9-10 of Appellant's Original Brief refute this contention.

Appellant's Original Brief at p. 4). The suggestion that Ms. Beckford, who had performed recruitment duties for all of seven months had more experience in this area than did Ms. Gittens who had performed such duties for 18 years is patently nonsensical and thus pre-textual. Under *Bennett* and *Watson*, this and other false explanations for adverse actions against Ms. Gittens alone require reversal of the summary judgment issued below.

With regard to the selection of 33-year old Fabrice Armand in mid-2015 as Director of Strategic Partnerships and Community Engagement rather than Ms. Gittens, Appellees cite Ms. Armand's "extensive experience in marketing, public relations, and advertising." AB at p. 13. Appellees fail to mention that Mr. Armand had no prior public employment, much less employment by the DOC, and according to his resume (A. 2939-2940) no experience in community engagement. He described himself as an "experienced marketing and management executive with 8+ years of experience in luxury brand, not-for-profit, strategy, publishing, business development, fundraising, sponsorship, event planning and execution." By contrast, Ms. Gittens' by then had 29 years of experience with the DOC which included senior level positions which included overseeing recruitment and hiring, and editing DOC advertisements. *See* Appellant's Original Brief at p. 4. Appellees' suggestion that Mr. Armand was selected because of his "extensive experience" or superior qualifications is thus nonsense and sheer pretext.

14

With regard to the 2015 decision to select 39-year old Darlene Martinez as Director of Human Resources while yet again by-passing Ms. Gittens, Appellees—while acknowledging that Ms. Martinez had never before worked for the DOC—cite her six years experience in Human Resources with another City agency. AB at p. 13. Given that Ms. Gittens had more than three times Ms. Martinez' experience in the field of Human Resources as of mid-2015, a jury could quite properly (and we believe would most likely) find Appellees' explanation to be pure pretext.

Appellees' opposing brief cites criticism of Ms. Gittens' work by Mr. Audwin Pemberton and by Ms. Pinnock and Ms. Hamilton during the time Pemberton was Ms. Gittens' supervisor. However, Pemberton was not hired by the DOC until March 2015 and did not even begin supervising Ms. Gittens until August 2016. *See, e.g.*, A. 1503, 0370. Thus, nothing he reported or claimed about Ms. Gittens has any conceivable bearing on her non-selection for the positions she sought in 2014 and 2015. Mr. Pemberton's allegations at most are relevant to the decision to pass over Ms. Gittens for promotion to Administrative Staff Analyst in October 2016.

With regard to that latter decision, Appellees cite the fact that, of the 17 passing candidates on the Exam 5517 eligibles' list who were selected for promotion, 13 (76%) were born before 1970 and nine were born between 1954 and 1961. AB at p. 33. But earlier in their brief (AB at p. 14), Appellees concede that

15

only four of the 17 selectees (23.5%) were as old or older than Ms. Gittens while the balance (76%) were younger. In other words, of the 18 successful candidates, Appellees chose to pass over the 5th oldest. And in doing so, they selected four candidates who were between 10 and 20 years younger than Ms. Gittens. AB at p. 14. And this occurred after Ms. Gittens had already worked for the DOC for approximately 30 years. The statistics cited by Appellees thus provide no basis for an inference that age was not a factor. This is especially so in the case of a senior position such as Administrative Staff Analyst in which the pool will always include older candidates. If anything, a trier of fact would be more likely than not to conclude from the statistics Appellees cite that age was indeed a factor if not the controlling factor.

Unlike *Hudson v. Merrill Lynch & Co., Inc*, 138 A.D. 3d 511, 31 N.Y.S.3d 3 (1 Dept. 2016) cited by Appellees, there was no evidence presented below that Ms. Gittens' work was demonstrably inferior to any of the 17 candidates selected. *Hudson*, 138 A.D. 3d at 516, 31 N.Y.S.3d at 4.

Appellees' other explanations as to why Ms. Gittens was the one and only passing candidate not selected are similarly pure pretext.

Appellees first cite Pemberton's claim that Ms. Gittens was "not eligible for promotion" to Administrative Staff Analyst because the tasks she was performing as of August-October 2016 were at a level below that of her existing title of

Associate Staff Analyst. AB at pp. 14-15. But, by any reckoning, Ms. Gittens upon her promotion to Associate Staff Analyst in 1993 was performing tasks at least at the Associate Staff Analyst level through at least 2014 when Ms. Simon arrived. The fact that Ms. Simon removed many of Ms. Gittens prior duties and then repeatedly refused to select her for the positions she sought in 2014 and 2015 is of course the reason Ms. Gittens had the duties she performed during 2014-2016. For Appellees now to cite these reduced duties against Ms. Gittens as an excuse for not promoting her is the worst form of boot-strapping.

Appellees then cite allegations by Mr. Pemberton that Ms. Gittens was not completing her work in a timely fashion and that this had spawned complaints by his "colleagues." AB at p. 15. This is more pretext. While we emphatically dispute the claim that Ms. Gittens was ever not performing her duties in a timely manner, this is all irrelevant to the questions of why Ms. Gittens was passed over for promotion in October 2016. As Mr. Pemberton expressly conceded in his deposition (A. 1550), the events and alleged criticisms concerning the timeliness of Ms. Gittens' work all related to her performance in mid-2018, nearly two years after she was passed over for promotion. Although we pointed this out in our earlier brief to this Court (at p. 44), Appellees make no mention of the chronological problem with their claims in their opposing brief.

17

As a final salvo, Appellees cite supposed problems with Ms. Gittens'
attendance as a reason for passing her over in October 2016.  AB at pp. 15-16.  All
of this, however, was fully refuted on pp. 44-46 of Appellant's prior brief.  While
Appellees cite the testimony of Ms. Pinnock about Ms. Gittens supposedly not
coming to work (AB at p. 15), all of this was based on what was reported to them
by Pemberton.  But this, as discussed in Appellant's earlier brief (at p. 44), related
to two discrete time periods.  One was the time Ms. Gittens took off between
August 29 and September 2016 to work on a political campaign.  There is,
however, no dispute that Ms. Gittens requested and was granted leave for this very
period by Pemberton.  A. 2311.  The other time was in December 2018-January
2019 when Ms. Gittens was out with pneumonia.  Whatever the merits of the
Pemberton/Pinnock unhappiness about this sick leave (which is hard to fathom in
any case), that sick leave was taken well over two years after Ms. Gittens was
passed over for promotion in October 2016 and thus had no conceivable bearing on
that decision.

Appellees also cite (AB at p. 34) the testimony of Defendant
Hamilton/Wynter which frivolously suggested that the corrective interview Ms.
Gittens received from Ms. Muhammed-Suluki was related to problems with Ms.
Gittens' attendance.  *See also* A. 0894.  A review of the July 16, 2016 document

detailing the basis for the corrective interview, however, utterly refutes that notion, and exposes this contention as blatant pretext.

In this matter, therefore, there are a plethora of false and misleading purported non-discriminatory explanations for the repeated non-selection of Ms. Gittens for upgrade or promotion. As discussed above (*see supra* at 1-2, 9), any one of these false explanations should have been a sufficient basis for denying summary judgment. Taken as a whole, the fact that Appellees have concocted so many patently false rationales for not selecting Ms. Gittens and instead selecting younger and generally far less experienced or qualified candidates would be sufficient for a jury to infer pretext and therefore find that Ms. Gittens' age rather than any deficiencies in her performance or experience were the basis for Appellees' actions even if a "but for" standard were to be applied. Applying the proper NYCHRL standard, however, the summary judgment ruling on Ms. Gittens age discrimination must be reversed.[6]

---

[6] With regard to Ms. Gittens' claims that she was denied advancement because of her May 29, 2015 complaint of discrimination and that this constituted unlawful retaliation, Appellees brief presents nothing that was not addressed in Point III of Appellant's earlier brief (at pp. 52-55).

<u>POINT III</u>

<u>SUMMARY JUDGMENT SHOULD
NOT HAVE BEEN GRANTED ON MS.
GITTENS' CLAIMS OF HOSTILE
WORK ENVIRONMENT</u>

Appellees concede that, under the NYCHRL, conduct need not be "severe"

or "pervasive" to constitute actionable hostile work environment.  AB at p. 44.

Nonetheless, they dismiss Ms. Gittens' complaints about the conduct to which she

was subjected as "petty slights."  AB at p. 45.  In so doing, however, Appellees

make no mention of the standards which determine whether a comment is

probative of discrimination or a non-probative "stray remark."  These standards

(whether the remarks were by a decision-maker in connection with employment

decisions; and the context of the remarks) and their application to what was done

to Ms. Gittens were described at pp. 35-36 of Appellant's earlier brief and require

a finding that she was indeed subjected to an actionable hostile work environment.

Appellees cite the fact that Mr. Pemberton's written description of Ms.

Gittens as an "old school secretary" were made in a memorandum that was not sent

to Ms. Gittens.  Appellees do not, however, deny that the Pemberton memo was by

a supervisor and was part of his campaign to deny Ms. Gittens advancement or

promotion within the DOC.  Furthermore, they entirely ignore the outrageous

comments Pemberton made directly to Ms. Gittens that she was not qualified for

promotion and that she was "not intelligent enough" to be an Administrative Staff Analyst.

Moreover, the content of the comments by Simon and Pemberton to Ms. Gittens which Appellees dismiss as "stray" occurred in the context of a work environment in which similar comments were being made unchecked by supervisors to other employees. For this reason, the blatantly ageist comments made to Ms. Cicero by her supervisor Ms. Dahlia Grant (*see* Appellant's Original Brief at pp. 37-38) were part of the environment Ms. Simon tolerated if not promoted. On any reading of the record, what was said to Ms. Cicero created a hostile environment based on age.[7]

---

[7] Appellees argue that the claims against the individual defendants must be dismissed because "aiding and abetting" liability is not viable where there is no proof of a violation by the employer. AB at pp. 47-48. They concede, however, that employees such as the individual defendants here can be sued independently of any "aiding and abetting" claim. In any case, we have demonstrated above and in Appellant's earlier brief that there was more than sufficient evidence of underlying liability to preclude summary judgment."

<u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse and vacate the judgment rendered below and remand the matter to the District Court for trial.

Date:  New York, New York
       July 17, 2023

                              GORDON, GORDON & SCHNAPP, P.C.


                              By:  <u>/s/ Kenneth E. Gordon</u>
                                     Kenneth E. Gordon
                                     30 Broad Street, 21ˢᵗ Floor
                                     New York, New York 10004

Of Counsel:
       Kenneth E. Gordon
       James M. Thayer

22

<u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

1. This brief contains 5034 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. The brief complies with the typeface requirements of Fed. R. App. P. 32(a) and the type Style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman font, size 14.

     GORDON, GORDON & SCHNAPP, P.C.


     By:<u>/s/ KENNETH E. GORDON</u>

     Attorneys for Appellant
     30 Broad Street, 21st Floor
     New York, New York 10004
     (212) 355-3200